George H. ADAMS et al., Plaintiffs-Appellees,

v.

MIAMI POLICE BENEVOLENT ASSOCIATION, INC., Defendant-Appellant.

No. 71–2108.

United States Court of Appeals, Fifth Circuit.

Feb. 2, 1972.

K. Neil Glassford, Miami, Fla., for defendant-appellant.

McCrary, Ferguson & Lee, Wilkie D. Ferguson, Jr., Jon Caminez, Legal Services of Greater Miami, Miami, Fla., for plaintiffs-appellees.

Before THORNBERRY, MORGAN and CLARK, Circuit Judges.

THORNBERRY, Circuit Judge:

This appeal arises from the district court's order that all black officers in good standing on the Miami police force be admitted to membership in appellant Miami Police Benevolent Association, Inc. Appellant is a nonprofit corporation made up of white members of the City of Miami Police Department. Among its purposes are "promoting the efficiency of the police department, promoting cooperation and harmony between its members and promoting harmony and cooperation with the general public and public officials."

Named plaintiffs are 51 of the approximately 70 black policemen on the Miami force. They filed this class suit based on 42 U.S.C.A. §§ 1981–88, seeking equitable relief to prevent appellant from continuing its alleged racially discriminatory practice of barring blacks from membership and to eliminate the effects of past discrimination. The district court defined the class as "all classified black policemen who are now regularly employed by the City of Miami Police Department under Civil Service and all black classified policemen who will be regularly employed by the City

of Miami Police Department in the future." The court dismissed the portions of the complaint grounded on 42 U.S.C. A. §§ 1984–88 but found violations of §§ 1981–83. Since we believe appellees have made their case under § 1983,[1] we shall not reach §§ 1981 and 1982.

The terms of § 1983 make plain two elements that are necessary for recovery. First, the plaintiff must prove that the defendant has deprived him of a right secured by the "Constitution and laws" of the United States. Second, the plaintiff must show that the defendant deprived him of this constitutional right "under color of any statute, ordinance, regulation, custom, or usage of any State or Territory." This second element requires that the plaintiff show that the defendant acted "under color of law."

Adickes v. S. H. Kress & Co., 398 U.S. 144, 150, 90 S.Ct. 1598, 1604, 26 L.Ed.2d 142 (1970). The district court concluded that appellant Association was an "adjunct" of the City of Miami Police Department acting under color of state law, and that it had denied appellees equal protection of the law in contravention of the fourteenth amendment. The Association argues on appeal that it is a private club, not a quasi-public body, and that it has not deprived appellees of any constitutional right.

I. State Action.

The bases for the district court's fact finding that appellant is an adjunct of the City of Miami Police Department may be summarized as follows:

1. Appellant uses the name "police" in its title and holds itself out to the public as "the police."

2. Appellant solicits contributions from the public, using the name "police."

---

1. 42 U.S.C.A. § 1983 provides:

    Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

In its last fiscal year appellant raised over $90,000 from the public.

3. Appellant operates a canteen at the City of Miami police headquarters. It employs prison and nonprison labor.[2]

4. Appellant operates vending machines at police headquarters and uses bulletin boards at the headquarters.

5. Appellant is represented at staff meetings held at the police department at which police policy is made.

6. Appellant is represented at City Commission meetings where it bargains for wages and other terms of employment for Miami policemen.

7. Appellant uses the facilities of the Police Department, including its police academy, to solicit members. It enrolls a substantial number of its members through solicitation at the academy.

8. All of the above activities are conducted openly and with the consent and approval of the City of Miami Police Department.

■ We believe the district court correctly decided that appellant was so closely entwined with the City of Miami Police Department that it was acting under color of law when it barred appellees from membership. *See* Adickes v. S. H. Kress & Co., *supra;* Burton v. Wilmington Parking Authority, 365 U.S. 715, 81 S.Ct. 856, 6 L.Ed.2d 45 (1961). This finding was not clearly erroneous and was supported by the record.

II. Deprivation of a Constitutional Right.

The district court held that appellant has denied appellees equal protection of the law by its custom of barring blacks from membership because of their race. Appellant Association, which was formed in 1936, has never had a black member although black officers have applied. Blacks at the police academy have been told membership is not availa-

ble to them. Until March 23, 1970 appellant's constitution had a "Caucasians only" clause. When that provision was deleted, the previous system of majority approval of new members was dropped and replaced with one permitting five members to veto an applicant. Since implementation of the new veto system, seven black officers have applied and all have been rejected.

■ The district court found that the five-vote-veto provision was merely a substitute for the whites-only clause and was meant to achieve the same result. This fact finding was not clearly erroneous. The court also concluded that membership in appellant is automatic for white officers between the ages of 21 and 32 who apply and pay dues. The record, which indicates the exclusion of only one white prior to March 23, 1970, supports this conclusion. We think the district court correctly decided that appellees have been excluded from appellant organization solely because of their race.

■ The crux of appellant's case is that appellees have failed to show what constitutional rights have been denied them by exclusion from membership in appellant. Appellees are members of the Miami Community Police Benevolent Association, which is comprised solely of black officers. Appellant argues that appellees, acting through this Association, perform the same or similar functions as appellant and reap benefits similar to those available to appellant's members, that is, bargain with the city over wages and working conditions, attend Police Department staff meetings, solicit funds from the public, maintain vending machines and a bulletin board at police headquarters, and administer death, retirement, and attorney funds. Appellant contends, along lines of "separate but equal," that black officers thus suffer no unconstitutional deprivation as a result of exclusion from membership in appellant. We disagree.

---

**2.** This operation nets over $200.00 per month, which goes into appellant's underprivileged children's fund.

The Miami police force is comprised of approximately 70 blacks and 650 whites. More than 400 of the white officers are members of appellant. The record starkly reflects that the black officers simply do not constitute a large enough group to effectively raise money from the public or amongst themselves to provide benefits to black officers equal to or even close to those appellant makes available to white officers. The black officers' association pays a $300 death benefit while appellant pays $1,000. Appellant's death benefit fund alone contains $137,000 while the black officers' association's total assets are only $9,000. In addition to their numbers, appellees are hampered by the competition of appellant. Appellees have been consistently unsuccessful in obtaining funds from the public, a major source of revenue for appellant. The usual response to public solicitation appears to be, "I've already given to the police," the "police" being appellant. Appellant does not inform contributors that it is not asking for funds for the whole police force but only for an all-white association that includes about three-fourths of the whites on the force.

Appellees serve the whole city of Miami, not just the black population. They perform the same duties as white policemen. Nevertheless, the funds available to them and to their families for death benefits, sickness and disability, and legal assistance are grossly inferior to those available to white officers. Moreover, the black officers do not have their own building, purchased largely with public contributions, where they can hold meetings and social functions as the white officers do.[3] Arguably, they do not have the same influence with the hierarchy of the police department and the city as the white officers do.[4] In short, a black officer on the Miami police force does not have rights, privileges, and benefits similar to those enjoyed by white policemen. This disparity is the result of appellant's racially discriminatory membership policies. The district court correctly decided that appellant has, while acting under color of law, deprived appellees of the right to equal protection of the law that is guaranteed them by the fourteenth amendment. In this situation § 1983 relief is appropriate.

III. Remedy.

The district court ordered:

The defendant shall forthwith offer full membership to all classified black policemen, in good standing, who are now regularly employed by the City of Miami Police Department under Civil Service; and all black classified policemen, in good standing, who will be regularly employed by the City of Miami Police Department in the future; provided, that any black policemen who are over the age of 32 years at the time of their admission into the defendant shall not share in its death benefit fund.

Appellant urges that the order goes too far, resulting in fact in discrimination against whites. It points out that since the inception of its five-member-veto policy in 1970 several white policemen in

---

3. Appellant's death benefit fund, attorney fund, and sickness and disability fund are supported solely by dues. Funds solicited from the public go into the building fund and general operating fund. Appellant's constitution contains, however, no provision preventing the use of money contributed by the public in any or all of its funds.

4. We are unable to discern from the record the relative influence of the various police organizations represented in bargaining sessions with the city and at police staff meetings. We do note that appellant has 400 members and the black policemen's association only 50 members. Most of the black officers who testified viewed their organization as marginally viable. We thus decide only that the district court did not err in considering the exclusion of blacks from appellant Association, which is a major bargaining unit for policemen and influential in determining department policies, as one factor in concluding that appellant's racial discrimination denied appellees equal protection of the law.

good standing have been barred from admission. Yet the court has ordered that *all* present and future black officers in good standing be admitted. Whites could therefore be excluded for reasons other than their civil service status and willingness to pay dues, while blacks could not.

■■ This argument is not persuasive. The matter of devising an appropriate remedy for deprivation of constitutional rights is addressed to the sound discretion of the trial judge. The district court concluded that appellant is open "to all [white] classified policemen who are now regularly employed by the City of Miami Police Department under Civil Service, . . . ." The record supports this conclusion, indicating that to the knowledge of the witnesses only one white policeman had ever been refused membership prior to March 23, 1970, when the whites-only clause was dropped. It is indeed unfortunate if the new membership provision, which the district court found was intended to exclude blacks, has resulted in the rejection of white officers.[5] We do not believe, however, that this is enough to require a modification of the district court's order. Given appellant's overt policy of racial discrimination that lasted until 1970, its present modified form of racial exclusion, and the virtually automatic membership for white policemen, the district court's order was appropriate.

■ Appellant also argues that the black officers should not be permitted to share fully in the various funds built up by appellant's members over a twenty-five year period. This contention has some superficial appeal, but that appeal disappears after brief reflection. The black officers have not contributed dues to the funds simply because appellant has excluded blacks from membership.

Other than dues the principal source of appellant's wealth is public contributions ($90,000 last year) which were solicited on behalf of "the Police." Surely the black officers have as much right as the white officers to this money. Moreover, the district court, cognizant of the actuarial considerations pertinent to appellant's death benefit fund, did not grant black officers over 32 years old rights in that fund. Finally, we note the long line of precedent holding that affirmative remedial relief to correct the effects of a pattern and practice of racial discrimination is often necessary. Louisiana v. United States, 380 U.S. 145, 85 S.Ct. 817, 13 L.Ed.2d 709 (1965); Local 53 of Int'l Assoc. of Heat & Frost Insulators & Asbestos Workers v. Vogler, 5th Cir. 1969, 407 F.2d 1047; United States v. Jefferson County Bd. of Educ., 5th Cir. 1966, 372 F.2d 836. This is such a case.

Affirmed.

---

5. The four white officers recently rejected were denied membership the same day as the seven black officers, who applied after the whites-only clause was deleted from appellant's constitution. The record suggests they were vetoed as a retaliatory move by members of appellant disgruntled by the rejection of the seven blacks.