**Weldon Robert WARREN et al.,**
**Plaintiffs,**

v.

**NATIONAL ASSOCIATION OF SECON-**
**DARY SCHOOL PRINCIPALS et al.,**
**Defendants.**

**Civ. A. No. CA–5–74–15.**

United States District Court,
N. D. Texas,
Lubbock Division.

May 21, 1974.

Thomas J. Purdom, Robert E. Garner, Jack O. Nelson, Jr., Garner, Boulter, Jesko & Purdom, Lubbock, Tex., for plaintiffs.

James H. Milam, Crenshaw, Dupree & Milam, Lubbock, Tex., Ivan B. Gluckman, Nat'l Assoc. of Secondary School Principals, Reston, Va., for defendants.

## MEMORANDUM OPINION

WOODWARD, District Judge.

Plaintiffs allege a cause of action under 42 U.S.C. § 1983 and claim jurisdiction under 28 U.S.C. § 1343. Plaintiffs are Robert Weldon Warren, a student in Tahoka High School, and his parents. Defendants are the four teachers who compose the faculty council of the National Honor Society at Tahoka High School and the national association which sponors the National Honor Society. Plaintiffs assert that defendants have deprived young Warren of certain rights in violation of the fourteenth amendment. This memorandum opinion will serve as the court's findings of fact and conclusions of law.

This case was tried before the court without a jury on May 9, 1974 and all parties were present with their counsel in open court. At the termination of the trial, the court orally entered a temporary restraining order prohibiting the defendants from taking any further action with respect to the dismissal of Weldon Robert Warren from the National Honor Society or the Tahoka chapter of the National Honor Society.

Weldon is presently a senior at Tahoka High School and will graduate within a few weeks. His school record is quite impressive and includes election to the National Honor Society in his sophomore year, quarterbacking a successful football team and being named salutatorian of his senior class. He has been generally recognized as a leader in all student activities and his scholastic ability, character and service to the school have been acknowledged by all parties as exceptional.

The National Honor Society is sponsored in many high schools throughout the country by the National Association of Secondary School Principals and the Tahoka chapter has had a charter from the national association since 1946. The Tahoka chapter has its own constitution (Pltf's Ex. 1), which governs the admission of students to and the conduct of the business of the chapter. Certain conflicts appear in the constitution which have a bearing on the case before the court. Section 1 of Article III provides that a council, consisting of the principal and four or more teachers selected by the principal are to conduct the election of the members to the chapter. There is no other provision in the constitution concerning the number to serve on this council, but in all actions in this suit the council was comprised of only three faculty members and the principal. Section 6 of Article II provides that dismissal "is the province of the faculty or the faculty council and principal." This follows the paragraph providing for dismissal of a member who deliberately violates a school or civil law or acts in a manner unbecoming as a member of the National Honor Society. The following section, Section 7, states that any member of the National Honor Society who falls below the standards which were the basis of his election for membership shall be dismissed from the chapter by the majority vote of the faculty upon the recommendation of the council.

As the disciplinary actions taken against Weldon were all initiated by the faculty council with no intervention by the entire faculty, it is obvious that the provisions of Section 7 were not followed. The decisions were all made by the faculty council acting alone, even though one of the members of the council was a complaining witness, placed the evidence against Weldon before the council and then voted in favor of Weldon's dismissal.

On the evening of October 14, 1973 Weldon, along with several of his fellow students, visited the Pizza Hut in Lub-

**1046**

bock, Texas. On this occasion Barbara Kitchens, a defendant herein and a member of the faculty council of the National Honor Society, was present at the same establishment with her date. Weldon ordered a beer and drank approximately six ounces of it while defendant Kitchens observed. The other students, although not ordering a beer themselves, witnessed the event and apparently one or two of them took a sip of the beer along with the plaintiff.

By some means or another, the event was well known in the Tahoka school on the following Monday. The principal of the high school, defendant Clifton Gardner, was out of the city and defendant Kitchens did not attempt to take any official action until he returned. However, informal discussions of the event occurred among defendant Kitchens and other members of the faculty during the first few days of the week of October 15th.

The event had been made known to the high school football coach and he imposed certain penalties, not involved in this case, because the plaintiff had broken athletic training rules. When defendant Gardner returned to Tahoka, on Thursday, October 18, 1973, conferences were held by the faculty council concerning this alleged "flagrant violation of the National Honor Society's rules." Ironically, the plaintiff was 18 years of age on the date of Mr. Gardner's return to the city, October 18, 1973, thus he was four days shy of the legal age for consuming alcoholic beverages when the Pizza Hut incident occurred. Apparently, however, this age difference was of no concern to members of the council as defendant Kitchens testified that her actions and opinions regarding the seriousness of Weldon's offense would have been the same regardless of whether or not he had been 18 years of age.

On the 18th, Weldon was called into the principal's office and he in effect admitted the facts as above outlined. His parents were out of town on the 18th but on the following day they met with the faculty council for over two hours during which the matter was fully discussed. Immediately after this meeting, an emergency meeting of the National Honor Society of Tahoka High School was convened in the school auditorium and the event was described to the students, after which two or three members submitted their resignations because they felt they could not abide by some of the rules of conduct. In this connection, Miss Kitchens had informed the chapter at an earlier meeting that it would be a violation of the rules of conduct for the members to drink. But there is no written rule or regulation that has been produced to this court stating that a member could not drink. Indeed, the testimony indicated that several other members of the National Honor Society also drink on occasion. The reason others have not been reprimanded and punished for these violations is that no witness has come forward to present the charges to the faculty council. Unfortunately for Weldon, his offense was committed in the presence of a council member who was able to testify personally as to each detail of the event.

The standards to be applied in these cases are not set forth in any written rule or regulation of the Tahoka chapter although there is a provision that for a flagrant violation of the rules a member need not necessarily be warned.

It should be made clear that this court will not in any way by this opinion condone, authorize, or justify any act by a student, or any other person, that constitutes a possible violation of the criminal laws of this state or nation. As admitted by the plaintiff and his parents, his conduct was perhaps not of the highest order on the occasion in question. Further, it is not for this court to pass judgment on whether or not the acts of the plaintiff were sufficient to warrant his dismissal from the Tahoka chapter of the National Honor Society, but rather to determine whether those charged with the responsibility of causing his dismissal followed the dictates of the Constitution of the United States of

America. As this court cannot condone or approve the breaking of rules or laws by students, it likewise cannot ignore the actions of any faculty member which fail to meet the requirements of the due process clause of the fourteenth amendment. Having no written rules or regulations to follow, the council proceeded with the two conferences above outlined with the plaintiff and his parents. No written notice of a hearing was afforded, no written notice was given of the charges against Mr. Warren and he was not told that he could present witnesses on his behalf or have a lawyer present to represent him. Early the next week he was handed a letter of dismissal signed by all four defendants.

However, a faculty council such as the one in this case is not required to follow the procedures and rules that would be required of a judicial proceeding by the courts, as the requirements of due process vary with the situation. Cafeteria Workers v. McElroy, 367 U.S. 886, 81 S.Ct. 1743, 6 L. Ed.2d 1230 (1961). It is obvious that Weldon knew what the violations were and that this was the matter in question before the council, and he was not in any way prohibited from having a lawyer calling witnesses or in any other way restricted. Thus the fact that he was not given written notice of the charges against him or afforded other judicial-type procedural protections does not necessarily indicate the lack of due process.

It should also be kept in mind that the action of the council does not prohibit the plaintiff from graduating with his class from high school and does nothing except to eradicate his name from the list of members of the National Honor Society and put a symbol in the records of the National Honor Society indicating his dismissal therefrom.

Therefore, three questions remain for this court to decide. First, was the act of the individual defendants and as members of the council of the Tahoka chapter of the National Honor Society done under color of law, as is re-quired to state a cause of action under § 1983? No one can become a member of this chapetr unless he is a student of the school system, only faculty members and the principal can serve on the council, and all were under contract to the Board of Trustees of the Tahoka Independent School District. Facilities and property of the school, including stationery and stamps, places of meetings, and the use of bulletin boards were available for use by the National Honor Society. These factors convince the court that when a member of the faculty council of such an honor society is acting as a member of such council that he is acting under color of law, as his action is materially entwined with the operation of the public school system. See, *e. g.*, Adams v. Miami Police Benevolent Association, Inc., 454 F.2d 1315 (5th Cir. 1972).

Therefore, the defendants having acted under color of law, the next question to be answered is whether the plaintiff was afforded procedural due process by members of the faculty council. As indicated above, even though strict judicial procedures were not followed in this case, the procedures were probably sufficient insofar as affording the plaintiff notice of the charges and giving him an opportunity to present his side of the case to the council. However, fundamental to the requirements of due process is the opportunity to be heard before a fair and impartial tribunal of some nature, composed of neutral and detached persons. See *e. g.*, In Re Murchison, 349 U.S. 133, 75 S.Ct. 623, 99 L.Ed. 942 (1955). Here that element of impartiality or neutrality is totally lacking. Here, where defendant Kitchens was the witness to the event, testified that it was her feeling that he had done it deliberately in her presence in such a manner that constituted a personal affront to her, acted as the accusing witness before the principal and council and finally sat as a judge in the dismissal hearings; the minimal constitutional requirement of a fair hearing is not met. It is true that the council was not presented with the issue of whether Weldon committed the violation in ques-

tion; but the council was presented with the problem of gauging whether this violation was so flagrant as to compel immediate dismissal instead of a warning or other less severe punishment. The determination of this latter issue should have been made by an impartial group.

■■ An additional problem here is that the council failed to follow the procedural rules established in the National Honor Society's constitution. For example, the faculty council dismissed Weldon on its own rather than making a recommendation to the entire faculty and letting them vote on the matter. Another example is that while the local chapter's constitution required that the faculty council be composed of the principal and at least four teachers, the Tahoka chapter's council consisted of only three teachers and the principal. These discrepancies must be considered as significant in view of the rule of law that an organization may create procedural rights in addition to the constitutional minimum where its own rules prescribe the additional safeguards. Ferguson v. Thomas, 430 F.2d 852 (5th Cir. 1970). Thus, the court is faced here with a situation where the plaintiff was denied both the constitutional minimum of a fair hearing before an impartial body and the additional procedural due process rights granted to him as a member of the Tahoka chapter of the National Honor Society.

■ The third question to be determined by this court is whether Weldon has been deprived of "life, liberty or property" within the meaning of the fourteenth amendment. The court is of the opinion that plaintiff has been deprived of "liberty" by the defendants' actions. If the dismissal is allowed to stand, Weldon could very well suffer injuries to his "good name, reputation, honor, or integrity." Board of Regents v. Roth, 408 U.S. 564, 573, 92 S.Ct. 2701, 2707, 33 L.Ed.2d 548 (1972). As the Supreme Court indicated in this latter case, such rights are important and, according to the mandates of the fourteenth amendment and 42 U.S.C. § 1983,

must be protected by the courts of this country. The dismissal of the plaintiff from the National Honor Society placed him in a position different from that he previously enjoyed. Weldon testified that he was treated differently by his teachers after this incident and it is obvious that this black mark of a dismissal, which will remain a part of the permanent school records, could very well have adverse effects on his future, including his further educational and employment careers. This dismissal could be found by anyone examining the school records and there is no remedy at law which can prevent the embarrassment and other irreparable harm to plaintiff which could be caused by the defendants' wrongful actions. Thus, the court finds that it must grant the equitable relief described hereinafter.

The court will not determine the question of whether or not the regulations, which Weldon is accused of violating, are vague and overbroad to the extent that they in themselves are unconstitutional. The resolution of this question is not necessary in view of the finding and conclusion that there was a lack of due process afforded Weldon.

■ Accordingly, the court will enter a permanent injunction in which all defendants will be ordered to expunge and remove from any and all records either directly or indirectly under their jurisdiction and control any mention, reference or indication that Weldon has been dismissed from the National Honor Society or from the Tahoka chapter of the National Honor Society. Further the defendants, and each of them, will be enjoined and prohibited from communicating in any manner to any other person or entity that such action had been taken in the past against Weldon. This equitable relief will be entered in a separate judgment.

■ The court further concludes that the plaintiffs are entitled to recover a reasonable attorney's fee from the defendants, except from defendant National Association of Secondary School Principals. The attorneys have indicated

that they will stipulate to the court the amount of such reasonable attorney's fees but if such a stipulation cannot be agreed upon by the attorneys, the court will order a hearing thereon.