Richard J. KRISS, Plaintiff-Appellant,

v.

Ward E. BROWN, Commissioner Indiana High School Athletic Association, Inc., Charles F. Maas, Anderson Community School Corporation by its Board of School Trustees, Dr. Harold E. Gallagher, Leonard Austin, Defendants-Appellees.

No. 1–778A191.

Court of Appeals of Indiana, First District.

May 29, 1979.

Al S. Woolbert, David W. Stone, IV, Woolbert, Cunningham & Hulse, Anderson, for plaintiff-appellant.

Stephen F. Burns, Cadick, Burns, Duck & Peterson, Indianapolis, for Ward E. Brown, Indiana High School Athletic Ass'n, Inc., and Charles F. Maas.

David W. Gotshall, Anderson, for Anderson Community School Corp., Dr. Harold E. Gallagher, and Leonard Austin.

LOWDERMILK, Presiding Judge.

## STATEMENT OF THE CASE

Plaintiff-appellant Richard J. Kriss (Kriss) brings this appeal after the Henry Circuit Court entered judgment denying his request for a permanent injunction and dissolving a restraining order entered against defendants-appellees Ward E. Brown, Indiana High School Athletic Association, Inc. (IHSAA), Charles F. Maas, Anderson Community School Corporation by its Board of School Trustees, Dr. Harold E. Gallagher, and Leonard Austin, restraining them from enforcing an order entered by the IHSAA declaring Kriss ineligible to participate in interscholastic athletic events as a student at Anderson Highland High School for the school year 1977–78.

## FACTS

Kriss played varsity basketball for his high school in North Judson during the 1976–77 school year. After school ended that spring, Kriss moved from his mother's residence in North Judson to the home of Mr. and Mrs. Adrian Richie in Anderson. In July of 1977 Mr. and Mrs. Richie were appointed guardians of Kriss.

The IHSAA is a voluntary organization which administers a program of interscholastic athletics for Indiana high schools. The IHSAA has adopted certain rules which must be followed by all member high schools.

Officials of North Judson High School notified the IHSAA during the summer of 1977 that rules of the IHSAA might have been violated when Kriss moved from North Judson to Anderson. After investigating the controversy, Commissioner Brown of the IHSAA issued a decision on September 1, 1977, declaring Kriss ineligible to participate in interscholastic athletics at Anderson because (1) the guardianship had been created primarily for the purpose of making Kriss eligible for athletic competi-

tion at Anderson, and (2) certain facts indicated that Kriss' move to Anderson had been the product of undue influence.

Kriss perfected an appeal. Pursuant to Rule 17, Section 3, of the IHSAA rules, the Executive Committee of the IHSAA provided Kriss a hearing at its next regular meeting. After considering the evidence presented, the Executive Committee ruled that Kriss was not eligible to participate in athletic competition at Anderson. The Executive Committee based its determination upon the same two reasons given previously by the Commissioner.

Kriss subsequently obtained a restraining order preventing enforcement of the order of ineligibility. He played basketball for Anderson Highland High School until January 20, 1978, the date on which the trial court entered the judgment from which Kriss brings this appeal.

## ISSUES

1. Is the determination of the IHSAA supported by substantial evidence of probative value?

2. Did Kriss demonstrate hardship which should excuse him from operation of the IHSAA rules?

3. Did the trial court err in refusing to conduct a hearing de novo?

4. Did the IHSAA have a duty to provide Kriss procedural due process?

5. Was Kriss denied procedural due process?

6. Are the rules of the IHSAA void for vagueness and overbreadth?

7. Are the rules of the IHSAA void as an improper delegation of authority by public schools to a private organization?

8. Is the IHSAA's Rule 19 contrary to public policy?

9. Did the IHSAA fail to follow its own rules, and did the IHSAA act in an arbitrary and capricious manner?

## DISCUSSION AND DECISION

*Issue One*

Kriss argues that the trial court erred in finding that the order of the IHSAA was

supported by substantial evidence of probative value. Kriss insists that the evidence does not show that his change of residence was secured by undue influence or that the creation of the guardianship was for the primary purpose of gaining transferee eligibility.

*Undue Influence*

 Undue influence presents a question of fact. It is usually proved by circumstantial evidence since it involves an operation of the mind. Direct evidence is required only to establish facts from which the trier of fact can make a proper inference of the presence of undue influence. *Huber v. Huber*, (1960) 131 Ind.App. 96, 164 N.E.2d 651; *Love v. Harris*, (1957) 127 Ind. App. 505, 143 N.E.2d 450.

Rule 20 of the IHSAA provides, in part:

"Section 1.

C—The use of undue influence by any person or persons to secure or to retain a student or to secure or to retain one or both of the parents or guardians of a student as residents, may cause the student to be ineligible for high school athletics for a period subject to the determination of the Committee and shall jeopardize the standing of the high school in the Association.

\* \* \* \* \* \*

Section 2.

C—No member school student shall be eligible to participate in any interschool contest under the rules of the Association, if it shall be shown that they or any member of their family are receiving any remuneration, either directly or indirectly, to influence them or their family to reside in a given school district or territory in order to establish eligibility on the team of said schools, and any school permitting such participation shall, upon satisfactory evidence, submitted to the Committee, be suspended from membership in the Association for a term of not less than 365 days.

\* \* \* ".

Immediately following Rule 20, the IHSAA sets forth examples of what may be considered undue influence:

"Q. What constitutes the use of undue influence?

A. An all-inclusive answer for all time and under all conditions cannot be given, but the use of any of the following inducements may come under the rule:

1. Offer or acceptance of money or other valuable consideration.

\* \* \* \* \* \*

4. Offer or acceptance of board, room or clothing.

\* \* \* \* \* \*

6. Free transportation.

7. Transportation by coach, principal, teacher or school official.

\* \* \* \* \* \*

12. Any inducement to get parents or students to change residence for athletic reasons."

Kriss' own witnesses provided the following evidence.

Kriss' mother referred to the contents of a note Kriss left her when he went to Anderson initially:

"He did not want to be a burden to me or Larry, my boy, and wanted to play basketball, and he had to play by himself. He wanted to go to keep up his basketball."

Coach Fuller of Anderson Highland High School had coached at North Judson prior to his move to Anderson. Kriss and Coach Fuller had known one another at North Judson.

The Richies moved to the Anderson school district after a coach at North Judson refused to let their son play on the varsity team. The Richies and the Fullers became good friends after the Richies moved to Anderson.

Late in May 1977 Kriss arrived unannounced at the home of the Richies, and they agreed to let him live with them. Thereafter the Richies provided Kriss room,

board, lunch money, and as Kriss stated, "everything I need."

In June 1977 Coach Fuller provided Kriss with transportation to Anderson after Kriss had been to North Judson. This was arranged, in part, by a man who was interested in becoming assistant coach at Anderson Highland High School and who had discussed that possibility with Coach Fuller. When Kriss' sister visited Kriss in August 1977, Kriss took her to meet Coach and Mrs. Fuller at their home.

 Kriss' witnesses offered explanations for the events described above. The Richies may have been interested only in providing Kriss a better home; Coach Fuller may have been returning a favor owed the Richies when he provided transportation for Kriss; Kriss may have had an unhappy home life in North Judson and may have moved solely for the purpose of gaining a better home. This court, however, cannot judge credibility of witnesses and cannot weigh the evidence. The direct evidence is required only to establish facts from which the trier of fact can make a proper inference of the presence of undue influence. *Huber v. Huber, supra; Love v. Harris, supra.* The record also includes other evidence favorable to the decision, all of which was admitted without objection from Kriss' attorney.[1] We find substantial evidence of probative value supporting the factual determination that undue influence was exercised.

*Guardianship*

Rule 19, Section 3, of the IHSAA rules provides as follows:

"Section 3.

C—When students transfer without a corresponding change of residence by parent-guardian the principal of the receiving school may certify residence eligibility provided there is no evidence of transferring for athletic reasons and bona fide evidence is on file that one or more of the following criteria has been met:

\*　\*　\*　\*　\*　\*

b. Student is a ward of a guardian whose residence is in the new district or territory.

A guardian appointed for the primary purpose of making an athlete eligible shall not be accepted.

\*　\*　\*　"

The IHSAA determined that the Richies were appointed guardians for the primary purpose of making Kriss eligible for athletics at Anderson Highland High School.

In the brief provided this court, Kriss contends that the guardianship was created for the primary purpose of making him eligible for enrollment in school at Anderson. Kriss' testimony before the Executive Committee does not support this contention. He informed the Executive Committee:

"A. The reason the guardianship was not done first is because my mom and my dad don't know Mr. and Mrs. Richie; I knew them a long time ago. They were like second parents to me; like an aunt and uncle. We wanted to find out if everything could be done right so I would be able to play basketball, so I would not be going through the danger of the present ineligibility, so we discussed it with Mr. Lawler, the Lawyer, and we thought if guardianship was established, that there would not be the danger of my being ineligible, and so it took awhile to get it through Court, and we talked about it quite a bit.

1. In *C. T. S. Corp. v. Schoulton*, (1978) Ind., 383 N.E.2d 293, 296, our Supreme Court quoted from an analysis by Judge Buchanan concerning hearsay evidence offered in administrative proceedings:

"'. . . The Board can admit all hearsay evidence without fear of automatic reversal. If properly objected to at the hearing and preserved on review and not falling within a recognized exception to the Hearsay Rule, then an award may not be based solely upon such hearsay. But *if not objected to, the hearsay (incompetent evidence) may form the basis for an award.*

\* \* \*'" (Our emphasis)

Judge Buchanan also explained that waiver is a part of the recognized practice in trial courts as well as in administrative proceedings.

Q. Were you the one that thought and suggested guardianship or who suggested guardianship?

A. I suggested it.

&ast; &ast; &ast; &ast; &ast; &ast;

Q. Rick, I think you must made a comment you discussed guardianship and eligibility with the attorney, Mr. Lawler?

A. Yes.

Q. Did I understand your last topic discussed with them was basketball eligibility; and you wanted to do it right by the guardianship?

A. Well, basketball is part of my life, and if I was going to move down here, I planned to go out for the team, if I made the team, you know.

Q. So you did discuss it with the Attorney, as you recall?

A. Well, basketball was never really mentioned to the Attorney because it was just the guardianship so I could get it established I was a resident here.

&ast; &ast; &ast; &ast; &ast; &ast;

Q. . . . My hang up is that if one group of school officials told you that your eligibility was in danger, where would you go to get the idea it was not and if basketball meant that much to you, why would you get into a situation where you could lose that eligibility?

A. The situation at home is not hardly one that is enjoyable, that is why.

Q. You did not make any attempt to see if that is correct on their interpretation of the rules?

A. The rule was there too if you are a ward of guardian, you can play; that rule is in there too. That is what I base that on.

Q. You found that on your own?

A. Yes, I did."

■ This testimony constitutes substantial evidence of probative value supporting a conclusion that Kriss sought and obtained the guardianship for the primary purpose of making himself eligible for athletic competition at Anderson Highland High School.

*Issue Two*

Kriss contends that he should be excused from operation of the IHSAA rules because of hardship. Kriss testified that he hoped for an athletic scholarship which would enable him to attend college, and that his playing basketball during his senior year was vital to promoting this possibility of obtaining a scholarship.

In *Sturrup v. Mahan*, (1974) 261 Ind. 463, 468, 305 N.E.2d 877, 881, Justice Hunter wrote for our Supreme Court:

&ldquo; &ast; &ast; &ast;

The objective of the IHSAA bylaws regarding transferee eligibility is to preserve the integrity of interscholastic athletics by minimizing recruitment, proselyting, and school 'jumping' for athletic reasons. . . . "

■ Considering the rising cost of a college education, certainly a majority of young people could claim that an athletic scholarship would enhance their opportunity to gain a college education. That is not a satisfactory reason, *per se*, for permitting Kriss or any other senior in high school to disregard the rules.

*Issue Three*

Kriss contends that the trial court erred when it refused to conduct a hearing de novo and limited itself to reviewing the evidence presented at the Executive Committee hearing.

In stating the issue, Kriss has somewhat misrepresented the position taken by the trial court. The trial court informed the parties:

"So, I think at this point that it would be the Court's ruling that the plaintiff cannot present anew the same evidence that he presented at the hearing before the defendant's Executive Committee. That he can present evidence and testimony and witnesses with regard to his contention that the defendant, IHSAA, failed to follow its own rules. That he can present evidence, testimony and wit-

nesses to show, as claimed, that no witnesses were presented or sworn, that he was not given any witness list, he was not afforded any opportunity to cross examine, or any of those other matters that plaintiff has alluded to.

Now, I'll go one step further with you, that if you have any new evidence which could not have been presented or which you didn't know about or couldn't have reasonably found out about at the time of the hearing before the Board, and if you can establish that fact first, then I will permit you to produce such evidence provided that you can satisfy the court that your failure to present such evidence to the Board was not a matter that you just didn't do it but it was a matter that you could not have reasonably been expected to do."

■ The trial court had a duty to receive only that evidence which was relevant to the allegations presented by Kriss' complaint in which he sought an injunction. Kriss has failed to demonstrate error by the trial court in this regard.

*Issues Four and Five*

Kriss contends that the IHSAA had a duty to provide him procedural due process and failed to perform that duty.

■ Two elements must be present before the protections of due process apply: (1) state action, and (2) liberty or property interests. *Mathews v. Eldridge*, (1976) 424 U.S. 319, 96 S.Ct. 893, 47 L.Ed.2d 18.

In *Haas v. South Bend Community School Corp.*, (1972) 259 Ind. 515, 520, 289 N.E.2d 495, 498, our Supreme Court held:

" . . . Regardless of how the IHSAA denominates itself as an organization, or how it characterizes its relationship with its member schools, it is abundantly clear that the association's very existence is entirely dependent upon the absolute cooperation and support of the public school systems of the State of Indiana. The enforcement of the rules promulgated by the IHSAA and adopted by the member

schools may have a substantial impact upon the rights of students enrolled in these tax supported institutions, and we conclude, therefore, that the administration of interscholastic athletics by the IHSAA should be considered to be 'state action' within the meaning of the Fourteenth Amendment. . . . "

Before addressing the equal protection argument in *Haas, supra*, Justice Hunter wrote at page 521 of 259 Ind., at page 498 of 289 N.E.2d:

" . . . At the outset, we deem it necessary to reaffirm our ruling in *State ex rel. IHSA Ass'n. v. Lawrence Circuit Court, supra*, to the extent it held that a student has no constitutional right to participate in interscholastic athletics. . . . "[2]

In *Board of Regents v. Roth*, (1972) 408 U.S. 564, 570, 92 S.Ct. 2701, 2705, 33 L.Ed.2d 548, Justice Stewart explained that "the range of interests protected by procedural due process is not infinite."

Kriss' argument on this issue consists of his conclusional statement that he must be provided due process and a quotation from *Kelley v. Metropolitan County Board of Education*, (M.D.Tenn.1968) 293 F.Supp. 485. Although the District Court found due process necessary after considering the specific facts of the case in *Kelley, supra*, another District Court found that participation in interscholastic athletics is outside the protection of due process. *Paschal v. Perdue*, (S.D.Fla.1970) 320 F.Supp. 1274. Kriss has not presented cogent argument for an issue such as this. Cogent argument would most certainly include an analysis such as can be found in *Roth, supra*. Kriss has not persuaded this court that the Supreme Court might view the situation differently now than it did when it decided *Haas, supra*.

Kriss contends that the IHSAA, in its decision, denied him liberty because it implied that Kriss had engaged in improper conduct.

Justice Stewart acknowledged in *Roth, supra*, at page 573 of 408 U.S., at page 2707 of 92 S.Ct., that

---

**2.** *State ex rel. IHSA Assn. v. Lawrence Circuit Court*, (1959) 240 Ind. 114, 162 N.E.2d 250.

" . . . '[w]here a person's good name, reputation, honor, or integrity is at stake because of what the government is doing to him, notice and an opportunity to be heard are essential.' . . . "

Kriss cites *Warren v. National Assn. of Secondary School Principals*, (N.D.Texas 1974) 375 F.Supp. 1043 in support of his argument that he was denied liberty. In *Warren, supra*, a student was dismissed from the local chapter of the National Honor Society for having consumed beer at a pizza parlor. The court held that the student had been deprived of liberty and noted, at page 1048 of 375 F.Supp., the following evidence:

" . . . Weldon testified that he was treated differently by his teachers after this incident and it is obvious that this black mark of a dismissal, which will remain a part of the permanent school records, could very well have adverse effects on his future, including his educational and employment careers. This dismissal could be found by anyone examining the school records and there is no remedy at law which can prevent the embarrassment and other irreparable harm to plaintiff which could be caused by the defendants' wrongful actions. . . . "

In the case at bar, Kriss transferred without a corresponding change of residence of his parents. Because of that fact, he had to satisfy one or more of the criteria listed in Rule 19, Section 3. The IHSAA determined that he met none of those criteria. Therefore, he was not eligible to participate in athletics at Anderson. At the same time, the IHSAA specifically found that Kriss could engage in athletics at North Judson. Kriss cites no evidence that anything adverse to his good name has been made a part of his permanent school record or that he has suffered disgrace of any sort.[3] *War-*

*ren, supra*, offers little support for Kriss' argument.

Additionally, if the decision of the IHSAA had threatened Kriss' liberty, Kriss would have been entitled only to an opportunity to refute the charges before the IHSAA. *Roth, supra*. The IHSAA did provide Kriss a hearing before its Executive Committee. Although Kriss finds numerous faults with that hearing,[4] Kriss fails to acknowledge a point made in several cases which he has cited to this court for other purposes. In *Kelley, supra*, at page 492 of 293 F.Supp., the court wrote:

" * * *

The minimum procedural requirements necessary to satisfy due process of law depend upon the circumstances and interests involved in the particular case. . . . "

In *Warren, supra*, at page 1047 of 375 F.Supp. appears this statement:

" * * *

However, a faculty council such as the one in this case is not required to follow the procedures and rules that would be required of a judicial proceeding by the courts, as the requirements of due process vary with the situation. . . . It is obvious that Weldon knew what the violations were and that this was the matter in question before the council, and he was not in any way prohibited from having a lawyer[,] calling witnesses or in any other way restricted. Thus *the fact that he was not given written notice of the charges against him or afforded other judicial-type procedural protections does not necessarily indicate the lack of due process.*
* * * " (Citation omitted; our insertion; our emphasis)

In order to determine the form of a hearing required by procedural due process

---

3. Kriss did testify that the controversy had been publicized, but he referred only to *his* statement to the newspaper and *his* interview conducted in the Richie home by a television station.

4. Among other things, Kriss argues that the hearing should have preceded the decision of

the Commissioner. Sections 5 and 2 of Rule 17 provide safeguards by suspending a determination of ineligibility until it becomes final by failure to appeal or by final decision of the Executive Committee, and by providing a speedy appeal procedure.

in a particular situation, the weights of the particular interests involved must be balanced. Kriss has simply assumed that the IHSAA was obligated to provide him all judicial-type procedural protections. This erroneous assumption leaves a fatal void in his argument.

▆ Kriss has not persuaded this court that he was denied due process, or that he was even entitled to due process.

## Issue Six

Kriss contends that the rules of the IHSAA are void for vagueness and overbreadth. In his argument he refers only to Rule 20, which concerns undue influence; we will limit our discussion accordingly.

Kriss argues in his brief:

"An examination of the rule makes it abundantly clear that no one including the IHSAA, could determine in advance what conduct would constitute 'undue influence' under the rule. . . . There is no way a person of ordinary intelligence could examine Rule 20 and determine what conduct would or would not constitute undue influence."

He also views the rule as an infringement upon his constitutionally protected rights to freedom of speech, association, and travel.

In *Huber v. Huber, supra,* at pages 103–4 of 131 Ind.App., at page 655 of 164 N.E.2d, appears this noteworthy comment:

" . . . Undue influence does not lend itself to an exact definition, since to define it by fixed principles would be to point out the highway of evasion to those who are desirous of circumventing it."

Having read Rule 20 in its entirety, we cannot agree that "undue influence" amounts to anything the Commissioner wants to so label. Rule 20 proscribes inducements to parents or students to retain or change residence for athletic reasons. The examples give guidance as to what constitutes undue influence when such actions are taken *for athletic reasons.* Obviously, the reasons for particular actions can only be ascertained by a trier of fact.

▆ Furthermore, Kriss might be in a position to claim violation of his rights to freedom of speech, association, and travel if the rule possessed the rigidity he demands of it. If Rule 20 proscribed all communication between student and coach or prohibited a coach from ever providing a student transportation, Kriss might have reason to be concerned about his constitutional rights. Instead, the rule forbids only such actions when they serve as inducements to retain or change residence for athletic reasons.

## Issue Seven

Kriss contends that the rules of the IHSAA are void as an improper delegation of authority by public schools to a private organization.

▆ Public school corporations do have authority to delegate certain duties to other persons and organizations. See IC 1971, 20-5-2-2(19) (Burns Code Ed.) and IC 1971, 20-5-2-1 (Burns Code Ed.) These provisions resolve the question as to Anderson Community School Corporation, where Kriss was ruled ineligible.

## Issue Eight

Kriss argues that Rule 19 contravenes a public policy permitting guardians to be appointed for minors.

▆ Contrary to Kriss' assertions in his brief, the IHSAA does not challenge the legality of the guardianship when it holds that a student is ineligible because the guardian was appointed for the primary purpose of making an athlete eligible for athletics. Neither is the IHSAA attempting to prevent the appointment of guardians. The IHSAA is only attempting to prevent school jumping for athletic reasons. Rule 19 actually expands eligibility for students who transfer for non-athletic reasons by recognizing the immediate eligibility of a transferee who is a ward of a guardian whose residence is in the new district. The caveat following that provision only enables the IHSAA to protect the primary purpose of Rule 19.

*Issue Nine*

Kriss contends that the IHSAA failed to follow its own rules and acted arbitrarily and capriciously.

■ Kriss argues both that the IHSAA refused to hear his evidence of mitigating circumstances and that the IHSAA ignored his evidence of mitigating circumstances, in contravention of its Rule 17. The record reveals that Kriss informed the Executive Committee of his need for an athletic scholarship. The fact that the IHSAA returned a decision adverse to Kriss does not demonstrate that the IHSAA ignored the evidence; it only demonstrates that the IHSAA did not consider the desire for a scholarship to be a sufficient reason to excuse Kriss from operation of the IHSAA rules. That conclusion is not unreasonable.

Kriss argues that the IHSAA violated Rule 17 by not permitting him to attend the hearing except when testifying. The rule states that all parties are entitled to attend. Kriss arrived after the hearing started; Kriss did not seek admittance to the hearing; his attorney was present throughout the hearing and made no reference to the absence of Kriss. We find no harm.

Kriss quotes various remarks made during the hearing by IHSAA officials. Kriss insists that these remarks demonstrate bias and prejudice. We have examined the record to determine the context of the statements. Kriss' argument is not persuasive.

Kriss finds fault with the fact that the IHSAA found him eligible to participate in athletics at North Judson while finding him ineligible at Anderson. In view of the fact that Kriss' mother lived in North Judson, we do not consider this aspect of the decision as evidence of arbitrariness or capriciousness.

In July or August 1977 Commissioner Brown had indicated to Kriss that he foresaw no difficulty concerning Kriss' move to Anderson. Kriss contends that the IHSAA acted arbitrarily and capriciously when it did not abide by that initial statement of Commissioner Brown. The record reveals, however, that in July Kriss expressed an interest only in playing tennis. Further, the IHSAA had made no investigation at the time. A different ruling based upon different facts is not evidence of arbitrariness or capriciousness.

The remainder of Kriss' argument is couched in terms of due process. Our resolution of Issues Four and Five disposes of these allegations.

We have sincerely attempted to respond to each contention of Kriss. Much of his argument has consisted of subjective characterization of the statements included in the record and the events described therein.[5] We, of course, must view the cold print of the record in the light most favorable to the judgment. Kriss has made certain allegations which the record does not fully support and has charged certain deficiencies for which he must assume at least part of the responsibility.[6]

It is impossible to discuss each of the more than eighty cases which Kriss has cited. We would comment, however, that the value of citing a case from the court of another state or from a federal court is

5. For example, Kriss characterizes the Commissioner as a prosecutor; Kriss insists that he was left with the duty of proving himself innocent; Kriss charges that the Commissioner controlled the decision of the Executive Committee.

6. For example, Kriss argues that the IHSAA did not permit him to attend the hearing; in fact, he did not seek admission, and his attorney was present throughout the hearing. He contends that he objected to hearsay evidence; we find only one comment by his attorney concerning hearsay evidence, and that was not phrased as an objection. Kriss insists that the charges were not sufficiently specific; although he corresponded with the IHSAA prior to the September 20 hearing, we find no request for a more specific statement of the charges either before or at the time of the hearing. Kriss complains that the transcript of statements was supplied by the IHSAA only three days before the date of the hearing; yet in a letter dated September 7, 1977, Kriss specifically asked that such material be furnished "at least three days" prior to the hearing. Kriss insists that he was not permitted to cross-examine witnesses at the hearing; we find no attempt at cross-examination.

greatly enhanced if the citation is accompanied by argument as to why the decision in that case should control the decision of the case at bar. This is especially true when the factual situations are significantly different. Kriss has relied upon cases involving, *inter alia*, employment termination, professional license revocation, Federal Trade Commission proceedings, workmen's compensation hearings, and criminal trials. Arguments on constitutional issues are not persuasive unless they incorporate both the recognized analytical tests and an application of those tests to the specific facts.

Having carefully reviewed the record, we must hold that the trial court placed proper limitations upon the scope of the trial court proceedings and correctly denied the request for a permanent injunction.

Judgment affirmed.

LYBROOK and ROBERTSON, JJ., concur.