**INDIANA HIGH SCHOOL ATHLETIC ASSOCIATION, INC., Appellant–Defendant,**

v.

**Bilal AVANT, b/n/f Rasheedah Majeed, Appellee–Plaintiff.**

No. 45A03–9402–CV–82.

Court of Appeals of Indiana, Third District.

May 22, 1995.

Transfer Denied Oct. 4, 1995.

⟜182

Robert M. Baker III, Johnson, Smith, Densborn, Wright & Heath, Indianapolis, for appellant.

MacArthur Drake, Gary, for appellee.

## OPINION

GARRARD, Judge.

The Indiana High School Athletic Association, Inc. (IHSAA) ruled that Bilal Avant (Avant) was ineligible to participate in varsity athletics at Roosevelt High School his

senior year under the IHSAA's Transfer Rule. The trial court disagreed with the IHSAA's determination and issued a preliminary injunction enjoining the IHSAA from rendering Avant ineligible for any varsity team during the 1993/1994 basketball season. IHSAA appeals.

### FACTS

During the summer following his junior year in high school, Avant transferred from Andrean High School (Andrean), a private high school located in Merrillville, to Roosevelt High School (Roosevelt), a public high school in Gary. Avant's parents did not change their residence; rather, Avant moved from a private school to a public school located in the same school district. Avant played basketball and baseball at Andrean during 9th grade, 10th grade and 11th grade. In fact, he played on the varsity teams in these sports his junior year, and he was characterized as an "outstanding" athlete and player. After transferring to Roosevelt, Avant hoped to continue participating in sports.

Both Andrean and Roosevelt are members of the IHSAA and are subject to the association's athletic eligibility rules. The primary purpose of the IHSAA Transfer Rule is to eliminate school jumping and recruitment. This rule provides, in substance, that a student who transfers to a member school *with* a change of residence by the student's parents will have immediate full (varsity) eligibility at the new school. However, a transfer *without* an accompanied move by parents will result in ineligibility during the first 365 days following transfer, unless the student qualifies under a listed exception. The rules also provide for limited (junior-varsity) eligibility when a student transfers without a corresponding change of residence by the parents. On the contrary, a student who transfers for "primarily athletic reasons" will be ineligible for all athletics for the first 365 days after enrollment at the new school. The IHSAA Hardship Rule mediates the harsh effects of the eligibility rules in limited situations.

Avant completed a Transfer Report as required by the IHSAA Rules. The IHSAA Executive Committee then held a hearing on November 12, 1993 to determine Avant's eligibility for interscholastic sports. The committee's written decision found that Avant was ineligible for varsity athletics during the 1993/1994 school year. Not only did he fail to qualify for full eligibility under the IHSAA rules, Avant also failed to establish that application of the Transfer Rule to him constituted an undue hardship. The committee granted Avant limited eligibility to participate in junior-varsity athletics at Roosevelt.[1]

On December 3, 1993, Avant filed a complaint for injunctive relief and jury demand against the IHSAA and Roosevelt. The trial court immediately issued a temporary restraining order against the IHSAA and Roosevelt. After a hearing, the trial court enjoined the IHSAA from preventing Avant from participation on any varsity athletic team at Roosevelt. The court further ordered that the IHSAA could impose no penalty on Roosevelt for allowing Avant to participate on its varsity teams, nor could the IHSAA take action against any school against which Avant played. The trial court found that it could review the IHSAA decision to determine if it was "arbitrary or capricious," and for violations of Article I § 23 of the Indiana Constitution. In granting the injunction, the court stated that Avant had shown a likelihood of success on the merits; however, it failed to identify the claim upon which Avant was likely to succeed. This interlocutory appeal followed.

### ISSUES

I. Whether the trial court properly reviewed the decisions of the IHSAA regarding Avant's eligibility.

    A. Whether judicial review of the actions of a private voluntary association is proper without first establishing a civil or property right.

    B. Whether the IHSAA acted arbitrarily or capriciously in granting Avant only limited eligibility.

---

1. Roosevelt has a rule or policy which prohibits seniors from participating in junior-varsity athletics.

II. Whether the trial court properly reviewed the actions of the IHSAA for violations of Article I § 23 of the Indiana Constitution.

    A. Whether Article I § 23 applies only to actions of the general assembly.

    B. Whether the IHSAA is involved in state action.

    C. Whether the IHSAA violated Article I § 23 by rendering Avant ineligible to participate in varsity athletics at Roosevelt.

III. Whether the trial court erred by enjoining the IHSAA from applying its Restitution Rule should the court's injunction be reversed.

## DISCUSSION AND DECISION

### I.

*A. Whether Judicial Review is Available.*

The IHSAA's first argument is that the trial court erred by concluding that the IHSAA's decisions were judicially reviewable. The IHSAA relies upon *State ex rel. Givens v. Superior Court of Marion County* (1954), 233 Ind. 235, 117 N.E.2d 553, for the position that courts may review actions of a voluntary association like the IHSAA only if a civil or property right has been invaded. The IHSAA contends that it affected no civil or property right of Avant's, and thus its decision was not reviewable by the trial court.

■ The general rule in Indiana as to voluntary associations is that courts will not ordinarily interfere to control the administration of their constitutions or by-laws, or to enforce rights springing therefrom. Our supreme court described this rule in *State ex rel. Givens* as follows:

A voluntary association may, without direction or interference by the courts, for its government, adopt a constitution, by-laws, rules and regulations which will control as to all questions of discipline, or internal policy and management, and its

right to interpret and administer the same is as sacred as the right to make them. *Id.* 117 N.E.2d at 555.

In *Givens,* certain members of a voluntary trade union sought by injunctive relief to force the holding of an election of officers of an association and the submission of their names as candidates at such election. The supreme court found that any attempt by the judiciary to compel the officers of the union to perform their duties as to the election of officers would be an unlawful interference with the association's internal affairs. *Id.* The court stated that "unless plaintiffs' complaint is based upon, and seeks the protection of, some civil or property right," the trial court here was without jurisdiction to grant relief. *Id.* Finding no civil or property right present, the court held that the trial court was without subject-matter jurisdiction. *Id.* 117 N.E.2d at 556.

■ We find disposition of this issue, however, to be governed by *Haas v. South Bend Community School Corporation* (1972), 259 Ind. 515, 289 N.E.2d 495. In *Haas,* our supreme court held that the IHSAA's rule prohibiting male and female students from competing on the same team or against each other denied equal protection as guaranteed by the Fourteenth Amendment to the Federal Constitution and Article 1 § 23 of the Indiana Constitution. *Id.* 289 N.E.2d at 501. Before addressing the constitutional issue, however, the Court deemed it necessary to "dispose of the apparent obstacle presented by [*State ex rel. IHSAA v. Lawrence Circuit Court* (1959), 240 Ind. 114, 162 N.E.2d 250]." *Id.* 289 N.E.2d at 497. The *Lawrence* case held that students have no constitutional right to participate in interscholastic athletics, and thus found the trial court to be without jurisdiction over the matter. *State ex rel. IHSAA v. Lawrence,* 240 Ind. at 124, 162 N.E.2d at 255. In 1972, *Haas* overruled the portion of *Lawrence* holding that the actions of the IHSAA were not judicially reviewable.[2] The Court indicated that a student cannot be arbitrarily denied the *opportunity to qualify* to participate in interscholastic athletic competition. *Haas,* 289

---

2. *Haas* reaffirmed the Court's prior ruling that a student has no constitutional right to participate in interscholastic athletics. *Haas,* 289 N.E.2d at 498.

N.E.2d at 497 (emphasis in original).[3] Thus, the IHSAA's decisions are reviewable under the arbitrary and capricious standard.[4]

### B. Whether the IHSAA Acted Arbitrarily and Capriciously.

The IHSAA next contends that it did not act arbitrarily and capriciously when it denied Avant full eligibility for interscholastic athletics after he transferred from Andrean to Roosevelt. Avant does not contest the finding that his actions violated the Transfer Rule, thus rendering him ineligible for varsity athletics. Instead, he argues that using his technical violation of the rule to disqualify him is arbitrary and capricious since he was not recruited by Roosevelt and the basis for his decision to transfer was financial and personal hardship rather than athletics.

■ The motivation behind Avant's transfer to Roosevelt was a factual issue before the IHSAA. The Court of Appeals will not judge the credibility of witnesses or weigh evidence that was before the IHSAA on factual issues. *Kriss v. Brown* (1979), 180 Ind. App. 594, 390 N.E.2d 193, 197. Therefore, we will affirm the IHSAA's factual determinations if supported by substantial evidence of probative value. *Id.*

3. The IHSAA attempts to distinguish *Haas* by limiting its holding to permitting review under the Federal Constitution. Appellant's brief, p. 18. The IHSAA's position, however, ignores the express overruling of *Lawrence*, which found no jurisdiction without infringement of a constitutional right. After *Haas*, actions of the IHSAA are judicially reviewable even absent a constitutional right.

4. Other cases have reviewed IHSAA decisions for arbitrary and capricious actions. *See Crane v. Indiana High School Athletic Ass'n* (1992), 7th Cir., 975 F.2d 1315, *reh'g. denied*, (upholding injunction where association acted arbitrarily and capriciously in declaring student ineligible because he moved from his divorced father's home to his mother's home in another district); and *Kriss v. Brown* (1979), 180 Ind.App. 594, 390 N.E.2d 193 (reviewing whether IHSAA failed to follow its own rules and whether it acted arbitrarily and capriciously).

5. Avant describes the following factors as an undue hardship:
   a. Between his freshman year (90–91 academic year) and senior year (93–94 academic year), the annual tuition at Andrean rose $700.00 to $2800.00;

■ The IHSAA determined that while the evidence was inconclusive to prove Avant's transfer was *primarily* for athletic purposes, the evidence sufficiently established athletics as a factor (emphasis in original). The IHSAA noted that Avant did not mention financial hardship when leaving Andrean or on his Transfer Report. Moreover, Avant did not follow up on the Andrean athletic director's offer to help Avant secure employment or available financial aid. Evidence indicated that Avant had disagreements with the Andrean basketball coach, as he did with all his coaches, and that he "had to put up with" the coaches' philosophy for three years. Before learning he could not play on the junior-varsity team, Avant's decision to transfer was attributed to his being unhappy at Andrean.

The IHSAA concluded that Avant did not qualify for relief under the IHSAA Hardship Rule.[5] This rule gives the IHSAA authority to set aside the effect of any rule when:

a. Strict enforcement of the Rule in the particular case will not serve to accomplish the purpose of the Rule;

b. The spirit of the Rule has not been violated; and

   b. Avant's family income comes from his father who works at U.S.X., and in 1992, working full time, earned approximately $30,000; historically, however, he has been laid off from his job, including an extended period in 1991.
   c. The miscellaneous cost of attending Andrean, together with cost of transportation, is more expensive than attending public schools;
   d. Avant's family incurred an additional $150.00 per month tuition cost to send Avant's brother to private school;
   e. The family purchased a car for Avant for $3200; the family is also paying an additional $100.00 per month insurance for the car;
   f. Avant's mother had a medical condition recently diagnosed; although the family has medical insurance, they feel there will be additional medical expenses;
   g. Avant's father is attending college part time; although U.S.X. has a tuition reimbursement plan, they feel that this will also cause an additional expense for Avant's family;
   h. Avant was unhappy spending the extra time he spent going to, attending and coming back from Andrean;
   i. Avant's attorney claims Avant will have less opportunity to obtain an athletic scholarship for college unless full eligibility is granted.

c. There exists in the particular case circumstances showing an undue hardship which would result from enforcement of the Rule.

The general consideration section of the hardship rule contains the following language:

Likewise, a change in financial condition of the student or a student's family may be considered a hardship, however, such conditions or changes in conditions must be permanent, substantial and significantly beyond the control of the student or the student's family.

While the IHSAA noted that attending Andrean did create a hardship on Avant's family, this financial hardship had existed since Avant's freshman year. Furthermore, the IHSAA found no *change* in the family's circumstances which would cause an undue hardship. Substantial evidence of probative value supported the IHSAA's factual determination that Avant was ineligible for varsity athletics due to his transfer. The IHSAA's decision was not arbitrary or capricious.

## II.

### A. Whether Art. I § 23 Applies Only to the General Assembly.

The IHSAA contends that the language of Art. I § 23 of Indiana's Constitution is limited to acts of the general assembly. Art. I § 23 states:

The General Assembly shall not grant to any citizen, or class of citizens, privileges or immunities which, upon the same terms, shall not equally belong to all citizens.

The IHSAA admits that our supreme court in *Haas* applied Art. I § 23 to the IHSAA, a private entity.[6] However, it argues that the court did not explain its extension of this provision to nonpublic entities.

As the state intermediate appellate court, we are of course obliged to follow the holdings of our supreme court, whether or not the rationale or the constitutional implications of a decision are explained to the satisfaction of litigants. *IHSAA v. Schafer* (1992), Ind.App., 598 N.E.2d 540, 553, *trans. denied; Patton v. State* (1987), Ind.App., 507 N.E.2d 624, 626, *reh'g. denied, trans. denied.* Since the *Haas* decision, the supreme court has not limited application of Art. I § 23 to actions of the general assembly. Therefore, when the state is sufficiently involved to treat decisive conduct as state action, Art. I § 23 applies.

### B. State Action.

The IHSAA next argues that we should reevaluate whether it engages in state action under the *Blum/Rendell–Baker* analysis.[7] Although Indiana courts have found previously that the IHSAA engages in state action, appellant asks us to reconsider this issue in light of the *Blum/Rendell–Baker* test and a line of cases holding that the NCAA does not engage in state action. Appellant reasons that "[t]he composition, function and rules of the NCAA are substantially similar, and the reasoning of the NCAA cases are equally applicable to the IHSAA." Appellant's brief at 30.

This court has already rejected the IHSAA's analogy between the NCAA and state high school associations. *IHSAA v. Schafer*, 598 N.E.2d at 550. In *Schafer*, the court noted that the U.S. Supreme Court placed an important footnote after holding

---

6. Other Indiana cases have stated that Art. I § 23 applies to actions of the IHSAA. *See Thomas v. Greencastle Community School Corp.* (1992), Ind.App., 603 N.E.2d 190, 191, n. 3; *IHSAA v. Schafer*, (1992), Ind.App., 598 N.E.2d at 554, n. 9; *IHSAA v. Raike* (1975), 164 Ind.App. 169, 329 N.E.2d 66, 71, n. 2.

7. The U.S. Supreme Court moved away from the entanglement theory of state action and set out a three-step analysis in *Rendell–Baker v. Kohn* (1982), 457 U.S. 830, 102 S.Ct. 2764, 73 L.Ed.2d

418, and *Blum v. Yaretsky* (1982), 457 U.S. 991, 102 S.Ct. 2777, 73 L.Ed.2d 534, as follows:
(a) To what extent is the business subject to state regulations?
(b) Is there a sufficiently close nexus between the state and the challenged action of the private entity so that the action of the entity may be fairly treated as that of the state itself?
(c) Does the private decision involve such coercive power or significant encouragement, either overt or covert, by the state that the choice must in law be deemed to be that of the state?

that the NCAA does not engage in state action. That footnote stated:

> The situation would, of course, be different if the membership consisted entirely of institutions located within the same State, many of them public institutions created by the same sovereign. (citations omitted)

*Id.* at 549. Thus, an important distinction between the NCAA and the IHSAA is that the NCAA represents schools at a national level while the members of the IHSAA are all secondary schools in Indiana. Based upon this footnote and our existing caselaw,[8] we previously concluded that the IHSAA engages in state action subject to judicial review in making and enforcing its rules. *Id.* at 550. The IHSAA has failed to persuade us differently.

*C. Application of Article I § 23.*

Because we have affirmed that Art. I § 23 applies to the IHSAA, we must determine whether application of the Transfer Rule to Avant violated this provision. Our analytical methodology is governed by a recent decision of the Indiana Supreme Court.

■ On November 28, 1994, the Indiana Supreme Court affirmed the decision of the full Workers' Compensation Board of Indiana that the statutory agricultural exemption to the Indiana Workers' Compensation Act did not violate Art. I § 23. *Collins v. Day* (1994), Ind., 644 N.E.2d 72, 82. In doing so, the court held that claims under Art. I § 23 should be interpreted and applied independently from federal equal protection analysis. *Id.* at 75. The court articulated two requirements which must be met by legislation granting unequal privileges or immunities in order to withstand constitutional scrutiny: (1) the classification must be based upon distinctive, inherent characteristics which rationally distinguish the unequally treated class, and the disparate treatment accorded by the legislation must be reasonably related to such distinguishing characteristics; and (2) the classification must be open to any and

all persons who share the inherent characteristics which distinguish and justify the classification, with the special treatment accorded to any particular classification extended equally to all such persons. *Id.* at 79. In applying this two-part standard, courts must accord considerable deference to the manner in which the legislature has balanced the competing interests involved. *Id.* at 79–80.

■ We first address whether the treatment of transfer students without a corresponding change of residence by their parents separately from students transferring with a change of residence by their parents is a classification based upon distinctive, inherent characteristics and, if so, whether the unequal treatment is reasonably related to such distinguishing characteristics. The Transfer Rule is designed to eliminate school jumping and recruitment of student athletes. Transfers not accompanied by a change in residence (or falling outside the thirteen exceptions) are suspect in that they are subject to substantial manipulation. The Transfer Rule deters unscrupulous students and parents from manufacturing all sorts of reasons for a transfer, thereby thinly disguising athletically motivated transfers. The distinctions between these classifications are reasonably related to achieving the IHSAA's purpose in deterring school jumping and recruitment.

Furthermore, we find that the Transfer Rule applies equally to all persons similarly situated. If a student transferring without a change in residence by his/her parents does not fit one of the thirteen listed exceptions or qualify as an "undue hardship," then the student is ineligible for varsity athletics.

We conclude that application of the two-part standard reveals no violation of Art. I § 23 in the present case.

### III.

■ The IHSAA's final contention is that the trial court abused its discretion by enjoining the IHSAA from enforcing its Resti-

---

**8.** *See Haas,* 289 N.E.2d at 498 (concluding that the administration of interscholastic athletics by the IHSAA should be considered "state action" within the meaning of the Fourteenth Amendment); and *Sturrup v. Mahan* (1974), 261 Ind. 463, 305 N.E.2d 877 (agreeing with Court of Appeals' assessment that IHSAA bylaws constitute state action within meaning of Fourteenth Amendment).

tution Rule. This rule requires restitution in the event that an injunction, which allowed a student who was ineligible under the rules to participate, is later voluntarily vacated, stayed, reversed or finally determined to have been unjustified. Restitution may include forfeiture of games, return of individual or team awards, and return of funds received by schools in a tournament. Avant would have us uphold the trial court's ruling, arguing that the Restitution Rule is against public policy because it punishes schools and students for complying with a court order.

We find Avant's argument persuasive. Avant and the member schools relied in good faith on the trial court's injunction. It would be illogical and manifestly unreasonable to exact penalties upon individuals and schools as punishment or retribution for their actions in compliance with a court order. Recently, this court held that a company acting within boundaries and under color of law cannot retroactively be held responsible for damages based upon a later court order invalidating action of the public service commission of Indiana. *United REMC v. Indiana Michigan Power Company* (Ind.App.1995), 648 N.E.2d 1194. We compared the situation in *United* to that in which a statute is found to be unconstitutional:

> " 'The theory that a law held unconstitutional is no law at all and void *abinitio* for all purposes, including retroactive invalidity, runs counter to the hard facts of life. The actual existence of a statute prior to a determination of invalidity is an operative fact. Because of such *de facto* existence and reliance upon its validity, it has practical consequences which cannot be justly ignored. The past cannot always be erased by a simple judicial decree.' "

*Id.* citing *Martin v. Ben Davis Conservancy District* (1958), 238 Ind. 502, 510, 153 N.E.2d 125. The same rationale applies and renders the IHSAA's restitution rule manifestly unreasonable. Therefore, we find no error on the part of the trial court.

### CONCLUSION

We conclude that the trial court erred by enjoining the IHSAA from rendering Avant ineligible to participate in varsity athletics at Roosevelt. Although the court had jurisdiction to review the IHSAA's decision concerning Avant's eligibility, the IHSAA did not act arbitrarily or capriciously in granting Avant only limited eligibility. Moreover, the IHSAA's actions did not constitute a violation of privileges or immunities under the Indiana Constitution.

Finally, we find the IHSAA's Restitution Rule to be manifestly unreasonable. Thus, the trial court did not err by prohibiting its enforcement against Avant and member schools.

HOFFMAN and DARDEN, JJ., concur.