659 N.E.2d 158 (1995)
INDIANA HIGH SCHOOL ATHLETIC ASSOCIATION, INC., and Robert B. Gardner, in his capacity as Commissioner of the Indiana High School Athletic Association, Inc., Appellants-Defendants,
v.
Freddy REYES, Lafayette Jefferson High School and Dennis C. Blind in his capacity as Principal of Lafayette Jefferson High School, Appellees-Plaintiffs.
No. 79A02-9504-CV-175.
Court of Appeals of Indiana.
December 11, 1995.
Transfer Granted May 15, 1996.
*159 Robert M. Baker, III, Johnson, Smith, Pence, Densborn, Wright & Heath, Indianapolis, for appellants.
Jay T. Seeger, Gambs, Mucker, Bauman & Seeger, Lafayette, for appellee, Freddy Reyes.
E. Kent Moore, Laszynski & Moore, Lafayette, for appellees, Lafayette Jefferson *160 High School and Dennis C. Blind, in his capacity as Principal of Lafayette Jefferson High School.

OPINION
FRIEDLANDER, Judge.
The Indiana High School Athletic Association and Robert B. Gardner, Commissioner of the Indiana High School Athletic Association (hereinafter collectively referred to as "the IHSAA"), appeal from an order of the Tippecanoe Superior Court enjoining the IHSAA from enforcing its "Eight-Semester Rule" against Lafayette Jefferson High School student Freddy Reyes and preventing Reyes from participating in IHSAA-sponsored sports during his senior year at that high school. The IHSAA presents the following restated issues for review:
I. Did the trial court err in concluding that the actions of the IHSAA, a voluntary association, are subject to judicial review?
II. Did the trial court err in concluding that the IHSAA engaged in state action subjecting its decision to constitutional scrutiny?
III. Did the IHSAA decision violate Reyes's right of equal protection as guaranteed by the Indiana Constitution?
IV. Did the trial court err in prohibiting the IHSAA from enforcing the Restitution Rule?
We reverse.
The facts favorable to the judgment are that Reyes was first enrolled in the ninth grade at Academia Del Espiritu Santo (the Academia) in Levittown Station, Puerto Rico during the 1990-91 school year. During that year, Reyes suffered from depression and related psychological problems which affected his academic performance. His transcript reflects that Reyes received ten F's, two D's, and two B's for courses taken during the year. Reyes's condition improved as a result of professional psychological counseling he received during and after the 1990-91 school year. However, as a result of his poor academic performance, Reyes was required to re-enroll in the ninth grade at the Academia for the 1991-92 school year. Reyes repeated all of the classes he had taken the previous year, receiving five D's, five C's, three B's, and one A.
During the spring and summer of both 1991 and 1992, Reyes was selected to participate on an all-star baseball team which participated in regular season contests and a national tournament. After completing the 1991-92 school year, Reyes traveled with his baseball team to Lafayette to participate in the Colt League World Series. Upon returning to Puerto Rico, Reyes asked his parents to allow him to move to Lafayette to attend high school the next year. His parents agreed and arrangements were made for Reyes to live with a family in Lafayette and to attend Lafayette Jefferson High School (the School) as a sophomore during the 1992-93 school year. Reyes was a member of the Lafayette Jefferson baseball team in the spring of 1993. In the spring of 1994, as a junior, Reyes again played on the high school baseball team, and was named to the all-state team at the conclusion of the season.
At the beginning of the 1994-95 school year, the IHSAA learned that Reyes had first enrolled in ninth grade in the fall of 1990, and informed the School that according to Rule 12-3 (the Eight-Semester Rule) of the IHSAA General Eligibility Rules, Reyes was ineligible to compete in interscholastic sports. According to the version of the Eight-Semester Rule which was applicable to Reyes's case, after enrollment in the ninth grade, students had a maximum of four fall semesters and four spring semesters of athletic eligibility. Reyes asked the IHSAA to grant him an extra year of eligibility pursuant to Rule 17-8 (the Hardship Rule), which states:
"The Commissioner or his designee or the Committee shall have the authority to set aside the effect of any Rule when, in the opinion of the Commissioner or his designee or the Committee:
a. Strict enforcement of the Rule in the particular case will not serve to accomplish the purpose of the Rule;
b. The spirit of the Rule has not been violated; and

*161 c. There exists in the particular case circumstances showing an undue hardship which would result from enforcement of the Rule." Rule 17-8.1.
The IHSAA Executive Committee denied Reyes's request for an extra year of eligibility, issuing the following relevant findings of fact and conclusions of law:
"2. When [Reyes] was in 8th grade, he was emotionally affected by his older brother's failure to be taken in the baseball draft and his schoolwork suffered; [Reyes] was referred to Dr. Victor L. Lleras for counseling.
* * * * *
9. [Reyes] is an excellent baseball player, and would be the best player on the Jefferson High School varsity team this spring. [Reyes]'s coach believes that [Reyes] will have an impact on the team although not as great an impact as if he were a pitcher. He is an excellent batter but they anticipate opposing teams will pitch around him as they did last year. If [Reyes] does not play on the team this year there will be other Jefferson High School students who will take his place.
10. Based upon last year's performance, [Reyes] has been heavily recruited by many colleges (including Purdue, I.U., I.S.U., B.S.U., University of Minnesota, Florida State and Middle Tennessee State), and has been scouted by many professional baseball scouts. His guardian believes that, had he been in the June 1994 professional baseball draft, he would have been drafted and potentially high enough to go on directly into professional baseball; he would have finished his schooling either at Jefferson High School or through a GED program.
* * * * *
12. [Reyes] did not participate in high school baseball in Puerto Rico because his school did not have an organized baseball program. However, [Reyes] initially came to the United States on a highly trained, skilled, and organized baseball team and, based upon his skill level, and in light of his brother's involvement in baseball, there is little doubt that [Reyes] had extensive baseball participation and training prior to arriving in Lafayette in the summer of 1992.

CONCLUSIONS
* * * * *
b. Granting [Reyes] a 5th year of eligibility is contrary to the goals of placing academics first and athletics second, of discouraging all decisions which subordinate academic decisions to athletic decisions, of refusing to permit athletics to take a dominant role, and of encouraging progress through high school toward graduation and a diploma. Here, it appears that [Reyes] is in high school for athletics, not academics; [Reyes]'s guardian even suggested that, had he known his eligibility was in question, [Reyes] would have gone into the draft prior to completing his senior year at Jefferson High School. [Reyes]'s parents and his psychiatrist believe that, without athletic eligibility, [Reyes]'s schoolwork will suffer; for [Reyes] to react as suggested, it is apparent that athletics has assumed a dominant position in [Reyes]'s high school career and that decisions relative to academics have been, and are being, subordinated.
* * * * * *
6. [Reyes] has failed to establish that there is, in his particular case, circumstances [sic] showing that an undue hardship would result from enforcement of the IHSAA Eight-Semester Rule. [Reyes]'s case does not present a case of ordinary hardship, much less undue hardship. [Reyes] places significant emphasis on the fact that, because of circumstances beyond his control (his emotional state) he underwent academic difficulties which necessitated repeating 9th grade. It is not necessary to determine whether those factors constitute a hardship since they did not create a situation in which [Reyes] has been denied an opportunity to be eligible for four years of athletics; indeed, the fact that [Reyes] was held back has not adversely affected his ability to be eligible and to participate in four full years of athletic competition, had all the schools he *162 attended offered athletic competition. [Reyes]'s repeating 9th grade only created the opportunity to obtain something beyond that which the IHSAA Rule permits all other students, four years of eligibility. Since [Reyes] has already had eight semesters of eligibility, there exists no hardship. Permitting a fifth year of eligibility would be neither fair nor equitable to the other student athletes who may only be eligible for four years of interschool sports. It should also be noted that it was [Reyes]'s decision (to remain in Lafayette) that has created this situation; had [Reyes] remained in Puerto Rico he would have had no athletic eligibility (since there is [sic] no interschool sports)[1] and by now he would have likely already have [sic] graduated from high school (because of his enrollment in the Commercial Institute of Puerto Rico). The Executive Committee commends [Reyes] and his family for taking action which may have advanced [Reyes] academically, it is nonetheless restrained from granting [Reyes] opportunities beyond those enjoyed by other students of member high schools of the IHSAA.
7. The Executive Committee does not believe that a hardship exists if [Reyes] does not play baseball this spring; moreover, whether [Reyes]'s participation has any impact on his scholarship potential is simply too speculative and the Executive Committee will not base a hardship on such evidence. However, even if that were a consideration, it is evident that [Reyes] has already generated significant interest in both college recruiters and professional recruiters and his participation this spring will not be a significant factor." Record at 214-222 [emphasis in original].
Reyes filed a verified Complaint for Injunctive Relief on grounds that the Executive Committee's decision was arbitrary and capricious and in violation of his equal privilege rights under Article 1, § 23 of the Indiana Constitution.
On February 16, 1995, the trial court issued a temporary restraining order in favor of Reyes. Following a March 21 hearing, the trial court reversed the Executive Committee's ruling upon its conclusions that: 1) the Executive Committee's ruling was judicially reviewable; 2) application of the Eight-Semester Rule in Reyes's case would not serve the Rule's purpose; 3) application of the Eight-Semester Rule would result in undue hardship to Reyes; 4) the IHSAA's decision was arbitrary and capricious; 5) the Rule violates Article I, § 23 of the Indiana Constitution because it is both over-inclusive and under-inclusive; and 6) an injunction was necessary to prevent immediate and irreparable harm. The court also ruled that the IHSAA could not enforce its Restitution Rule[2] against the School. On March 30, *163 1995, the IHSAA initiated the instant appeal and on April 3, 1995, the IHSAA filed a Petition to Stay Judgment Pending Appeal with the trial court. The petition to stay was denied on April 12. Oral argument was held before this court on the campus of Purdue University in West Lafayette, Indiana on October 24,1995.

I.
The IHSAA contends that its ruling in the instant case was not subject to judicial review.
The IHSAA contends that the powers of courts of equity to issue injunctive relief are limited to the protection of civil and property rights, citing State ex rel. Givens v. Superior Court of Marion County (1954), 233 Ind. 235, 117 N.E.2d 553. The IHSAA continues that "Reyes's claim to athletic eligibility is based, not on any independent right or privilege rooted in the law, or by statute, but only on the eligibility rules (Eight-Semester and Hardship) of the IHSAA which Reyes seeks to enforce...." Appellant's Brief at 14. The IHSAA also cites Givens in support of the proposition that courts are reluctant to interfere in the internal affairs of a voluntary association, such as the IHSAA, or to enforce rights springing therefrom.
The reviewability of IHSAA athletic eligibility decisions was recently addressed in Indiana High School Athletic Ass'n, Inc. v. Avant (1995), Ind.App., 650 N.E.2d 1164, trans. denied. There, as here, the IHSAA argued that Givens rendered its eligibility ruling beyond the purview of judicial review. Citing Haas v. South Bend Community School Corp. (1972), 259 Ind. 515, 289 N.E.2d 495, the Avant court rejected this contention, holding that the IHSAA's decisions are reviewable. We agree with this aspect of the Avant decision and hold that the decision is reviewable for the reasons set forth in Avant.
The IHSAA contends that the trial court erred in concluding that the IHSAA's decision to deny an extra year of eligibility was arbitrary and capricious.
We first address the nature of the review to be conducted by a trial court when reviewing IHSAA eligibility decisions. The trial court in the instant case correctly determined that such decisions are reviewable under the arbitrary and capricious standard. See Avant, supra; Kriss v. Brown (1979), 180 Ind.App. 594, 390 N.E.2d 193. However, at oral argument before this court, the IHSAA contended that the trial court erred in conducting what amounted to a de novo review of the IHSAA's decision. Such is not an inaccurate characterization. The trial court conducted a hearing at which the parties presented evidence substantially similar to that which had been presented at the hearing before the IHSAA. We conclude that the scope of review applied by the trial court in the instant case was overly broad and we set out the appropriate scope of review to be employed in such cases.
The IHSAA is a voluntary association. When reviewing an association's actions with respect to factual determinations, "the scope of review should be the same as that of administrative agencies, i.e., the trial court cannot weigh the evidence and must uphold the organization's finding if it is supported by any substantial evidence." Terrell v. Palomino Horse Breeders of Am. (1980), Ind.App., 414 N.E.2d 332, 335 n. 2.[3] This limited scope of review of IHSAA eligibility decisions was implicitly approved in Kriss, supra. In Kriss, the IHSAA had determined that the appellant was ineligible after moving out of his mother's home in one school district and into the home in another school *164 district of a couple who were then appointed his guardians. The trial court affirmed the IHSAA's decision. Upon appeal, the appellant argued that the trial court erred in refusing to conduct a hearing de novo and in limiting itself to reviewing the evidence presented at the IHSAA hearing. The court rejected the appellant's claim, stating that the trial court had a duty to receive only that evidence which was relevant to the appellant's allegations upon appealing the decision of the IHSAA. The court noted that the trial court ruled that: 1) the appellant could not present anew the same evidence he had presented at the IHSAA hearing; 2) the appellant could present evidence relevant to his claim that the IHSAA had failed to follow its rules in conducting the hearing; and 3) the appellant could present new evidence only upon a showing that the evidence could not have been presented, was not known to the appellant, or could not reasonably have been discovered at the time of the hearing. In summarizing its holding, the court stated: "Having carefully reviewed the record, we must hold that trial court placed proper limitations upon the scope of the trial court proceedings...." Kriss, supra, at 203.
We conclude that when reviewing IHSAA eligibility decisions, a trial court is limited to reviewing the record of the proceedings conducted before the IHSAA with respect to the factual determinations made by the IHSAA. The trial court may receive new evidence only if such evidence pertains to matters concerning the IHSAA proceedings, or if it pertains to factual determinations made by the IHSAA and the failure to present such evidence to the IHSAA was not attributable to choice or inexcusable neglect. Id. The trial court's task upon review is the same as when reviewing an administrative agency's decision. The court may not reweigh evidence or judge witness credibility, but simply analyzes the record as a whole, including both the proceedings before the IHSAA and the proceedings before the trial court, to determine whether the IHSAA's findings were supported by substantial evidence. Avant, supra; Terrell, supra; Kriss, supra; see Medical Licensing Bd. of Indiana v. Provisor (1995), Ind.App., 653 N.E.2d 1035. The trial court is not to try the case de novo or substitute its judgment for that of the IHSAA. Cf. Provisor, supra (applying the principle in reviewing an administrative agency decision).
When reviewing the trial court's judgment with respect to factual determinations made by the IHSAA, our scope of review is the same as that applied by the trial court. We examine the record of the proceedings before the IHSAA, together with any properly admitted, relevant new evidence presented to the trial court, to determine whether there is substantial evidence to support the IHSAA's findings. Both trial and appellate courts must accord great deference to IHSAA eligibility determinations. With respect to trial court determinations regarding the propriety of the proceedings conducted before the IHSAA, our review again is the same as that of the trial court. Trial court rulings regarding the constitutionality of IHSAA rules and rulings are not controlling upon a reviewing court. See Indiana Dep't of Envtl. Management v. Chemical Waste Management, Inc. (1994), Ind., 643 N.E.2d 331.
Having determined that the trial court applied an improper scope of review, we now review the IHSAA's eligibility determination applying the correct standard. We must overturn the IHSAA's decision upon a determination that the association acted arbitrarily and capriciously in making the decision. Indiana High School Athletic Ass'n, Inc. v. Schafer (1992), Ind.App., 598 N.E.2d 540, trans. denied. In making this determination, we employ a deferential scope of review.
The IHSAA declined to grant Reyes an extra year of eligibility upon its conclusion that the purposes of the Eight-Semester Rule would be served by enforcing its provisions and denying Reyes's request. Specifically, the IHSAA cited the following purposes and goals of the Eight Semester Rule: 1) promotion of academics; 2) creation of athletic opportunities for younger students; 3) competitive equality; and 4) health and safety of other student athletes. The IHSAA concluded that denying Reyes's request would be consistent with the goal of *165 promoting academics as the primary consideration for student athletes. The IHSAA noted that Reyes's guardian testified that if Reyes had known his eligibility was in question, he would have entered the professional baseball draft before his senior year. The IHSAA also noted that Reyes's parents and psychiatrist believe that Reyes's schoolwork would suffer if he were not allowed to play. The IHSAA reasoned, "for [Reyes] to react as suggested, it is apparent that athletics has assumed a dominant position in [his] high school career and that decisions relative to academics have been, and are being, subordinated." Record at 55.
One goal of the Eight-Semester Rule is that academics, not athletics, be a student-athlete's primary consideration. The IHSAA's desire that academic considerations be the driving force in a student athlete's high school career is not only reasonable, but commendable as well. The IHSAA concluded that baseball had assumed a preeminent role in Reyes's decision-making process regarding high school. The record supports this conclusion because it appears that Reyes's primary concern was baseball and that academics had been subordinated to the point of being dependent upon Reyes's satisfaction with his progress in baseball.
The IHSAA determined that granting Reyes an extra year of eligibility would be contrary to the goal of creating athletic opportunities for younger students. Reyes's coach testified that Reyes was the best player on the team, and therefore would be a full-time player. As the IHSAA noted, Reyes would "displace another Jefferson High School student who had not played more than four years and would otherwise be on the team, and otherwise starting." Record at 56. The IHSAA also determined that Reyes's participation would be contrary to the goal of promoting competitive equality among its member schools. According to the IHSAA, "There is no question that Reyes's participation on the Jefferson High School varsity baseball team will have an impact on the competition." Record at 56.
The IHSAA's conclusions that Reyes's participation would mean one less starting position and one less roster spot on the team are unassailable. Reyes had earned all-state honors playing first base the previous year and would certainly start at first base in the spring of 1995. If Reyes had not been on the team, it cannot be disputed that other players who had not already had four years of high school eligibility would have been competing for one more starting position on the varsity team as well as one more spot on the varsity roster. With regard to the IHSAA's determination that Reyes's participation would impact the competitive balance between Lafayette Jefferson High School and its opponents, in view of the fact that Reyes won all-state honors in 1994, this conclusion is beyond debate.
The record supports the IHSAA's findings with regard to the facts of Reyes's previous participation and high school background. We conclude that the IHSAA's findings, in turn, support its conclusions that Reyes's participation in what would be his fifth year of eligibility would be contrary to the purposes and goals of the Eight-Semester Rule, i.e., prioritizing academics, providing athletic opportunities for younger players, and promoting competitive equality among member schools.
Reyes's argument that his participation would not be contrary to the purposes behind the Eight-Semester Rule, however, centers upon another identified purpose of the Rule. Reyes contends that the chief reason the Rule was enacted was to prevent the practice of red-shirting.[4] Indeed, Commissioner Robert Gardner of the IHSAA agreed that the Eight-Semester Rule's focus was to prevent red-shirting. It appears that the trial court's determination that the IHSAA's decision was arbitrary and capricious was based mainly upon the juxtaposition of the Eight-Semester Rule's anti-red-shirting focus and the IHSAA's acknowledgment that Reyes was *166 not guilty of red-shirting. The trial court concluded that "the IHSAA conceded that [Reyes] did not violate the spirit of the rule, but then strictly applied the Rule against him." Record at 22.
The Eight Semester Rule is not merely an anti-red-shirting rule. It serves other purposes, as previously discussed. If some or all of the other purposes are served by application of the Rule, even when it is clear that the student in question did not intend to gain athletic advantage by skipping or repeating a year, application of the Rule to deny extra eligibility does not amount to arbitrary and capricious action. Moreover, the IHSAA explained that the goal of discouraging red-shirting would actually be served by denying Reyes's request:
"c. Granting [Reyes] a 5th year of athletic eligibility is contrary to the goal of discouraging the practice of redshirting. Although [Reyes] has apparently not redshirted, the enforcement of the IHSAA Eight-Semester Rule as to [Reyes] will discourage other student athletes who might consider redshirting if [Reyes] is allowed a 5th year of eligibility. The Executive Committee is well aware that others would not be adverse to enumerating legitimate reasons for repeating a grade of high school as a subterfuge for otherwise improper athletic-motivated conduct." Record at 56.
The IHSAA's concern about recognizing exceptions to the Rule are reasonable and legitimate. It is reasonable to believe that the spirit of the Rule would be compromised by granting Reyes's request because the Rule works best when applied consistently and uniformly, and the Rule prevents redshirting precisely because the IHSAA allows few exceptions.
The IHSAA's refusal to grant Reyes an exception under the Hardship Rule was also supported by the record. In determining whether the exception should apply, the IHSAA considers the following three questions: 1) Will strict enforcement of the rule serve to accomplish the purpose of the Eight-Semester Rule; 2) has the spirit of the Rule been violated; and 3) would an undue hardship result from strict application of the Rule? Although acknowledging that Reyes had not violated the spirit of the Rule, the IHSAA determined that strict enforcement of the Rule would accomplish the Rule's purposes. We have previously acknowledged the legitimacy of this view. The IHSAA also concluded that Reyes would not suffer undue hardship. The record supports this conclusion as well. The thrust of Reyes's hardship argument was that his opportunities to play baseball beyond high school, whether professionally or at the collegiate level, would be severely diminished if he were not allowed to play high school baseball in the spring of 1995. However, the record indicates that Reyes had already attracted considerable attention from professional scouts and college recruiters because of his baseball ability. Accordingly, his post-high school baseball opportunities were not dependent upon his performance during the high school baseball season in the spring of 1995.[5] The record supports the IHSAA's determination that two of the three applicable factors weighed against applying the Hardship Rule to grant Reyes an extra year of eligibility. Therefore, the IHSAA did not act arbitrarily and capriciously in declining to apply the Hardship Rule in Reyes's case.
In summary, the goals and purposes underlying the Eight-Semester Rule are legitimate. The IHSAA's determination that at least some of those purposes and goals would be served by denying Reyes's application for an additional year of eligibility was not arbitrary and capricious. The trial court erred in determining otherwise.

II.
Reyes argued successfully to the trial court that the IHSAA decision violated Article 1, § 23 of the Indiana Constitution. The IHSAA argues that Article 1, § 23 does not apply to the IHSAA and its decision are not reviewable when challenged on the basis of that section of the state constitution. In essence, the IHSAA contends that its decisions *167 should not be subjected to constitutional scrutiny because they do not constitute state action.
The IHSAA acknowledges that the Indiana Supreme Court has concluded that the IHSAA engages in state action. See IHSAA v. Raike (1975), 164 Ind.App. 169, 329 N.E.2d 66; Haas, supra. However, the IHSAA argues that the validity of that conclusion was called into doubt by the United States Supreme Court in Blum v. Yaretsky (1982), 457 U.S. 991, 102 S.Ct. 2777, 73 L.Ed.2d 534, and Rendell-Baker v. Kohn (1982), 457 U.S. 830, 102 S.Ct. 2764, 73 L.Ed.2d 418. This contention is based upon the argument that the holdings in Haas and Raike incorporated the so-called "entanglement theory", whereby conduct formerly considered private becomes so intertwined with government policies or takes on a governmental character such that the conduct becomes subject to the constitutional limitations which are placed upon state action. See Howard Univ. v. National Collegiate Athletic Ass'n (1975), D.C.Cir., 510 F.2d 213. In Blum and Rendell-Baker, the IHSAA argues, the Supreme Court rejected the entanglement theory, thus eliminating the rationale underpinning the Indiana Supreme Court's ruling that IHSAA decisions constituted state action. The IHSAA's contention in this regard has been specifically rejected in Avant, supra and Schafer, supra. We agree with this aspect of Avant and Schafer and hold that the decision that Reyes would not be granted an extra year of eligibility was state action, subjecting the decision to constitutional analysis.

III.
The IHSAA contends that the trial court erred in concluding that the Eight-Semester Rule as applied to Reyes violated Article 1, § 23 of the Indiana Constitution, which states: "The General Assembly shall not grant to any citizen, or class of citizens, privileges or immunities, which, upon the same terms, cannot equally belong to all citizens." The trial court ruled that the Eight-Semester Rule violates Article 1, § 23 as follows:
"11. Rule 12 violates Article 1, § 23 of the Indiana Constitution because it unreasonably sweeps too broadly and creates an over-inclusive class by automatically rendering ineligible all students who technically run afoul of the Rule, although some of those students do not violate the purported purposes of the Rule. Although the IHSAA concedes that [Reyes] was not redshirted (i.e. held back for athletic reasons), the IHSAA grouped him with other student athletes who do repeat grades for athletic reasons and, therefore, ruled [Reyes] ineligible.
12. Rule 12 violates Article 1, § 23 because it is unreasonably over-inclusive in that individuals who intend to violate the purported purposes of the Rule could do so by holding the student back prior to enrollment in high school. Under Rule 12, students could repeat the eighth grade for athletic reasons and not be punished by the IHSAA, while students like [Reyes] who repeat the ninth grade for all the right reasons are arbitrarily punished. If [Reyes] would have repeated the eighth grade for purely athletic reasons, he would be eligible under the IHSAA's rules." Record at 25.
The new test to be applied when assessing a constitutional challenge to legislation under Article 1, § 23 of the Indiana Constitution was recently set forth by our supreme court in Collins v. Day (1994), Ind., 644 N.E.2d 72.
"Article 1, Section 23 of the Indiana Constitution imposes two requirements upon statutes that grant unequal privileges or immunities to differing classes of persons. First, the disparate treatment must be reasonably related to inherent characteristics which distinguish the unequally treated classes. Second, the preferential treatment must be uniformly applicable and equally available to all persons similarly situated. Finally, in determining whether a statute complies with or violates Section 23, courts must exercise substantial deference to legislative discretion." Id. at 80.
Applying the Collins test, the first inquiry is whether the treatment of students who have enrolled in more than eight semesters since *168 initial enrollment in ninth grade separately from those who have enrolled in eight or less semesters is a classification based upon distinctive, inherent characteristics and, if so, whether the unequal treatment is reasonably related to such distinguishing characteristics.
The distinctive characteristics of fifth-year seniors, for purposes of § 23 analysis, are greater physical size and strength, greater development of athletic ability, and greater previous opportunity for participation. The purpose of the Eight-Semester Rule appears to be two-fold. First, the IHSAA seeks to ensure that athletics will not supplant academics as the most important consideration in a student's high school career by discouraging redshirting and encouraging progress toward graduation. Second, the Rule promotes health, safety, and competitive equality of student athletes by barring fifth-year seniors from competing because fifth-year seniors are generally older, bigger physically, and better athletically than students who are fourth-year seniors or younger. Reyes concedes that the classification is based upon distinctive, inherent characteristics which rationally distinguish the unequal class. See Appellee's Brief at 12.
We must next determine whether the preferential treatment is uniformly applicable and equally available to all persons similarly situated. Reyes contends that the Rule is constitutionally infirm because it is both over-inclusive and under-inclusive. It is over-inclusive because it renders some students ineligible who were not, in fact, guilty of intentional redshirting. Reyes points out that the IHSAA concedes that Reyes did not repeat ninth grade for the purpose of redshirting. It is under-inclusive because it does not apply to students who repeat any grade from one through eight for the purpose of redshirting.
The IHSAA contends that reversing the decision based upon a finding that the Rule was over-inclusive and under-inclusive was improper because, under such rationale, any rule would be invalidated upon a finding the rule was unfairly applied to even one person, or that it did not "sweep within its sphere each and every student who might figure out an angle to avoid the implications of the rule". Appellant's Brief at 43. We agree that conformity with § 23 does not require such precision. Our supreme court has stated in a related context:
"A classification having some reasonable basis is not to be condemned merely because it is not framed with such mathematical nicety as to include all within the reason of the classification and to exclude all others. Exact exclusion and inclusion is impractical in legislation. It is almost impossible to provide for every exceptional and imaginary case, and a legislature ought not to be required to do so at the risk of having its legislation declared void, even though appropriate and proper as applied to the general subject upon which the law intended to operate." Collins, supra, at 80.
With one exception, the Eight-Semester Rule is applicable to all students, regardless of where they have attended school, the level of previous athletic participation, or the motives behind the actions or decisions causing them to be fifth-year seniors. The lone exception is for students who suffer an injury or illness so serious as to require complete withdrawal from school. See Rule 12-3. In order to fall within the exception created in Rule 12-3, the nature of the injury or illness must be such that the student does not gain any athletic experience during the period of withdrawal, whether in IHSAA sports or in non-school competition. Apart from this exception, which is narrowly crafted and well defined, the Eight-Semester Rule applies to everyone. This uniformity of application is sufficient to satisfy the second element under Collins.
Reyes argued at oral argument before this court that the Hardship Rule itself[6] is unconstitutional because it vests too much *169 discretion in the IHSAA.[7] Reyes contends that the Hardship Rule criteria are so subjective in nature that they present the possibility that the IHSAA could approve an application for extra eligibility based mainly upon personal motives of an individual decision-maker. Regardless of whether this assertion is true in theory, the reality is that the IHSAA has never granted a request for extra eligibility under the hardship exception. Moreover, were we to agree that the Hardship Rule is unconstitutional and deem it invalid, such would extinguish the lone exception under which Reyes sought an extra year of eligibility, leaving him without grounds to request additional eligibility. Be that as it may, we conclude that the Hardship Rule is constitutional under the Collins test.
The Hardship Rule applies only to those who have suffered an injury, illness, or accident which causes the student to fail to meet a basic requirement. The disparate treatment authorized by the rule, i.e., an extra year of eligibility, is reasonably related to an inherent characteristic distinguishing the unequally treated class, that being a lack of opportunity to participate based upon disabling circumstances. The first criteria under Collins is thus satisfied. Application for a hardship exception may be made by any student who believes that he or she may qualify. Its uniform applicability is apparent by virtue of the fact that it has been denied to every student who has sought an extra year of eligibility under its provisions. The Hardship Rule therefore satisfies the second element of the Collins test, i.e., uniform applicability and equal availability. We conclude that the Hardship Rule is constitutional.

IV.
The IHSAA contends that the trial court erred in enjoining the IHSAA from enforcing the Restitution Rule.
The Restitution Rule applies to schools and athletes who have participated in interscholastic competition where a student is ultimately determined to be ineligible to participate but who nevertheless participated in accordance with a restraining order or injunction. The Restitution Rule permits the IHSAA to require the school to forfeit victories and return trophies, awards, and funds received from tournaments. In addition, the Restitution Rule permits the IHSAA to require that the ineligible individual return individual awards.
We note that the Avant court determined that the Restitution Rule itself is manifestly unreasonable and, impliedly, unenforceable in any context. The Avant court reasoned, "It would be manifestly unreasonable to exact penalties upon individuals and schools as punishment or retribution for their compliance with a court order." 650 N.E.2d at 1171. Upon this issue, we disagree with the Avant holding.
The language employed by the Avant court reflects that it considered the Restitution Rule to be punitive in nature. The court viewed the Restitution Rule as a provision which "exact[s] penalties ... as punishment or retribution for ... actions in compliance with a court order." Id. Viewed in this way, it is not surprising that the court deemed the rule to be manifestly unreasonable. We agree, however, with the assertion made by the IHSAA at oral argument that the Restitution Rule is not a retributive sanction. While the rule punishes in the sense that schools or individuals may be required to forfeit victories, awards, or funds, it is important to consider the reason for the punishment. The schools and individuals are not being punished because they sought relief in a court of law, as the Avant language suggests. Rather, teams are punished for having used an ineligible player, and individuals for having participated while ineligible. The flaw in the Avant court's view is that it fails to consider that orders such as the injunction in the instant case affect persons and institutions that are not parties to this action. Little or no recognition or consideration was given to the rights and interests of other teams that would be competing against Lafayette Jefferson High School's baseball team in the spring of 1995.
*170 In the instant case, for example, each school that lost a baseball game to Lafayette Jefferson High School in the spring of 1995 lost to a team that was using a player who ultimately was determined to have been ineligible at the time. The Restitution Rule allows the IHSAA to require Lafayette Jefferson High School to forfeit the game and then to award the victory to the team whose players were eligible. It is also important to note that the IHSAA does not single out for sanctions only those violations which occur incidental to a court order. For example, IHSAA rules also require forfeiture when a school uses an ineligible player inadvertently. Thus, the Restitution Rule is like other similar IHSAA rules in that it is triggered by violations of IHSAA eligibility rules.[8] The Restitution Rule simply provides that resort to the courts does not permanently immunize violations of the eligibility rules.
We find persuasive the Michigan Supreme Court's resolution of the issue with regard to the Michigan High School Athletic Association's version of the Restitution Rule. In Cardinal Mooney High School v. Michigan High School Athletic Ass'n (1991), 437 Mich. 75, 467 N.W.2d 21, the Michigan Supreme Court held that the rule is valid. The court explained:
"It is reasonably designed to rectify the competitive inequities that would inevitably occur if schools were permitted without penalty to field ineligible athletes under the protection of a temporary restraining order, pending the outcome of an ultimately unsuccessful legal challenge to one or more eligibility rules. We find relevant to our decision the fact the [the restitution rule] does not purport to authorize interference with any court order during the time it remains in effect, but only authorizes restitutive penalties when a temporary restraining order is ultimately dissolved and the challenged eligibility rule remains undisturbed in force. We also find relevant the fact that the member schools of the MHSAA have voluntarily agreed to submit to the MHSAA's regulations, including [the restitution rule], as a condition of their membership. Furthermore, compliance with MHSAA rules on the part of student athletes is an appropriate and justifiable condition of the privilege of participating in interscholastic athletics under the auspices of the MHSAA." Id. at 24 [footnotes omitted].
As was the case with the MHSAA, the IHSAA is a voluntary association and members schools agree as a condition of membership to abide by the IHSAA's rules. IHSAA member schools and their athletes must meet eligibility requirements in order to compete and members schools have agreed that participation by an ineligible student, whatever the reason, requires that the offending school forfeit the contest to the opponent and forfeit any awards or monetary proceeds resulting from the tainted participation. While application of the rule may seem harsh in some circumstances, when viewed from the perspective of schools that lost games, tournaments, or championships because of losses against teams that were using ineligible players, the rule is both just and fair. Similarly, a player who won awards or honors for competing while ineligible cannot complain of unfair treatment when asked to return such awards. Finally, without a mechanism such as the Restitution Rule, there would appear to be no deterrent to schools or players seeking injunctions from unfavorable eligibility determinations at such a time that the merits of the case may not be decided until after the relevant season is finished.[9] The trial court erred in prohibiting *171 the IHSAA from enforcing the Restitution Rule in this case, should it choose to do so.
Judgment reversed.
SULLIVAN and RILEY, JJ., concur.
NOTES
[1] We note that the IHSAA's use of the term "eligibility" in this context is inaccurate. The IHSAA observes that if Reyes had remained in Puerto Rico, there would be no controversy regarding his eligibility to play baseball because there are no interschool sports in Puerto Rico. This observation addresses Reyes's opportunities, not his eligibility. The two terms are not synonymous. By definition, the IHSAA rules and bylaws apply only to athletic competition among IHSAA member schools and their students. The eligibility rules are intended to address a student's eligibility to participate in Indiana interschool high school sports. The eligibility criteria include age, academic achievement, residency, and also provide for a limited period of eligibility, commencing with initial enrollment in ninth grade. The rules are not dependent upon the opportunities available to students to play a particular sport, or any sport for that matter, whether in Indiana or elsewhere. In the instant case, the eight-semester period of eligibility to play IHSAA sports commenced running for Reyes when he began ninth grade in Puerto Rico, regardless of whether his school provided him with the opportunity to play interschool sports.
[2] The Restitution Rule states:

"If a student is ineligible according to Association Rules but is permitted to participate in interschool competition contrary to Association Rules but in accordance with the terms of a court restraining order or injunction against the student's school and/or the Association and the injunction is subsequently voluntarily vacated, stayed, reversed or it is finally determined by the courts that injunctive relief is not or was not justified, any one or more of the following action[s] against such school in the interest of restitution and fairness to competing schools shall be taken:
a. require individual or team records and performances achieved during participation by such ineligible student be vacated or stricken;
b. require team victories be forfeited to opponents;
c. require team or individual awards earned be returned to the Association; and/or
d. if the school has received or would receive any funds from an Association tournament series in which the ineligible individual has participated, require the school forfeit its share of net receipts from such competition, and if said receipts have not been distributed, authorize the withholding of such receipts by the Association." Record at 112, IHSAA By-Laws and Articles of Incorporation, p. 47.
[3] Underscoring the deferential nature of the scope of reviewing of an association's determinations, the Terrell court stated: "an association's decision on the merits must be upheld unless `contrary to natural justice, purely arbitrary and one that no honest mind could adopt.'" Terrell, supra, at 335 n. 2 (quoting Madden v. Atkins (1958), 4 N.Y.2d 283, 297, 151 N.E.2d 73, 80, 174 N.Y.S.2d 633, 644 (Desmond, J., concurring)).
[4] Commissioner Robert Gardner defined redshirting as:

"Attempting to gain another year of eligibility generally through delaying or laying out of school so that you could gain another yearanother semester as [sic] eligibility to be able to continue your athletic career". Record at 1019.
[5] We note in passing that it was disclosed at oral argument that Reyes played professional baseball in Tennessee following the 1995 high school baseball season.
[6] We emphasize here that Rule 12-3, which provides an exception to the Eight-Semester Rule in some cases of injury and illness, and the Hardship Rule, Rule 17-8, are not one and the same. Among other things, the Hardship Rule is a rule of general applicability, and does not constitute a possible exception only to the Eight-Semester Rule. Moreover, the Hardship Rule is not necessarily limited to cases of injury and illness.
[7] Reyes also argued that because the hardship exception is unconstitutional, the entire Eight-Semester Rule is unconstitutional. Having rejected the premise, we also reject the conclusion.
[8] We note in passing that, when specifically asked at oral argument before this court, counsel for Reyes did not question the wisdom or fairness of the IHSAA rules requiring forfeiture and sanctions in cases where use of an ineligible player was inadvertent.
[9] On this subject, the Kentucky Court of Appeals has noted the difficulties inherent in resorting to courts of law for resolution of questions involving high school athletic eligibility:

"This case demonstrates that courts are a very poor place in which to conduct interscholastic athletic events, especially because this type of litigation is most likely to arise at playoff or tournament time. If an injunction or restraining order is granted erroneously, it will be practically impossible to unscramble the tournament results to reflect the ultimate outcome of the case. In almost every instance, the possible benefits flowing from a temporary restraining order or injunction will be far out-weighed by the potential detriment to the Association, as well as to its member schools who are not before the court. Only in rare instances would the granting of the temporary restraining order or temporary injunction be a proper remedy." Kentucky High School Athletic Ass'n v. Hopkins County Bd. of Educ. (1977), Ky.App., 552 S.W.2d 685, 690.